## CATHERINE MACHADO *v.* T. MITAMURA.

## No. 1057

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.
### HON. S. B. KEMP, JUDGE.

ARGUED APRIL 1, 1918.                    DECIDED APRIL 10, 1918.

COKE, C. J., QUARLES, J., AND CIRCUIT JUDGE HEEN
IN PLACE OF KEMP, J., DISQUALIFIED.

NEW TRIAL—*nonsuit—directed verdict.*

In an action to recover damages by reason of alleged negligence the evidence was conflicting to the extent that the jury would have been authorized to have found a verdict for either party motion for nonsuit and a motion for an instructed verdict were both properly denied, and a motion for a new trial should have been denied.

SAME—*excessive damages.*

A motion for a new trial on the ground that the verdict for $1000 damages is excessive is properly denied under the facts which the evidence in this case tends to prove, there being no showing or circumstance disclosed by the record to the effect that the verdict of the jury was the result of passion or prejudice.

OPINION OF THE COURT BY QUARLES, J.

The plaintiff, a woman of twenty, commenced this action against the defendant, a regular practicing physician, to recover damages claimed to have been sustained by plaintiff by reason of the negligence of the defendant in treating her in a case of childbirth. The trial in the circuit court resulted in a verdict for $1,000 in favor of the plaintiff. The defendant then moved for a new trial upon a number of grounds, the first being that the court erred in denying defendant's motion for a nonsuit, the second, third, fourth,

fifth and sixth grounds being alleged errors of the court in giving instructions to the jury, and the seventh being upon the ground that the court erred in refusing defendant's request to instruct the jury to find for the defendant. This motion for a new trial was granted by the trial court, but the record does not disclose upon what ground it was granted. The cause comes before us upon interlocutory exceptions allowed by the trial court, one to the decision of the trial court upon the motion for a new trial, and the other to the order granting a new trial. The consideration of these exceptions requires us to review the evidence, the instructions and the motion for a new trial.

We have carefully examined the instructions complained of and find no reversible error therein and do not think that it would be of any benefit to discuss the said instructions given.

A solution of the question raised by the motion for a nonsuit and the request for an instruction to find for the defendant make it necessary for us to carefully examine the evidence and from it we find that there is testimony from which the jury was authorized to find the following facts: The defendant, a regularly licensed physician and surgeon, was, without previous notice, called at 1 o'clock a. m. January 14, 1917, to attend plaintiff, then laboring in childbirth. Defendant, after an examination, made two injections of pituitrin in plaintiff's side, there being quite an interval between the two injections, after which he waited for something like an hour without results. The defendant then attempted to remove the fetus with forceps. There is evidence tending to show that the defendant used great force in his efforts persisting until he was exhausted, when he had a woman nurse who was with him pull with the instruments until she was also exhausted, when defendant again used the instruments until again exhausted; that

while pulling with the instruments defendant was some-times sitting and sometimes standing pulling with force sufficient to swing plaintiff's body from one side to an-other and up and down; that about 4:30 a. m. the de-fendant and his assistant left and went home defendant stating that he was tired and needed rest and that they would return later about 8 or 9 o'clock that morning; that somewhere between 8 and 9 o'clock the defendant and his attendant nurse returned and the same operations were continued until the child, still-born, was delivered, which was about 1 o'clock p. m.; that the defendant, his attendant nurse and the chauffeur with defendant took turns about in pulling at the instruments. After the delivery and the removal of the after-birth a rupture or tear in the perineum was discovered which the defendant sewed, some of the witnesses say, with two, others with four, stitches, and de-fendant had the attendant nurse properly place a pad sat-urated with some antiseptic. The defendant testifies that he returned that afternoon but three witnesses for the plaintiff testify that he did not return that afternoon but did return on the following day with his attendant nurse and that the nurse replaced the pad with a new one, after which the defendant never visited plaintiff again, but his attendant nurse returned daily for four days, and that she on the fourth day, against the protest of plaintiff and her husband, removed the stitches which had been made to close the tear in the perineum, the nurse saying at the time that defendant had directed her to do so, after which neither she nor the defendant returned to attend the plain-tiff. About January 26, plaintiff's husband testifies that he visited defendant and told him that his wife was suf-fering—that she was worse—and requested him to attend her but he did not do so, but gave witness some powder to mix with water and give to plaintiff. On January 27, the

plaintiff growing worse, her husband called Dr. Hayes, a practicing physician, to attend plaintiff. Dr. Hayes testifies that he found her with a high temperature, 105 degrees fahrenheit; that the rupture or tear in the perineum was open and infected; that he treated plaintiff thereafter until the 26th of February, when plaintiff was out of danger; that plaintiff was in bed during all of that time. The evidence shows that plaintiff was confined to her bed for about two months and was weak and unable to perform her usual household labor from then until the trial in June following.

As to whether the defendant used proper care in looking after plaintiff and followed the proper practice in doing so the evidence is conflicting. Some of the expert witnesses testify that the patient in a case of this kind should be attended frequently, in a normal case for eight or ten days, while in a case like that of plaintiff, she should be attended by the physician until she attains a normal condition. Others testify that the course pursued by the defendant was proper practice, but some of these experts so testifying state that if called before-hand to attend a case of childbirth they would look after the woman several days before delivery and for eight or ten days thereafter. Expert witnesses introduced by the defendant also testify that in a case of this kind, where the physician is notified at any time that the patient's condition is unfavorable or that she is suffering, it is the duty of the attending physician to immediately attend her. Evidence on behalf of plaintiff shows that her husband went to the office of defendant on January 26, twelve days after the delivery, and told him that plaintiff was getting worse and asked him to go to her and that defendant said there was "no pilikia" and gave him a powder to mix with water and give to his wife to drink. This was denied by the defendant who

stated that plaintiff's husband did come to see him on the 26th but said that she was getting along all right but had a bad cold and he wanted some cough medicine for her which defendant gave him to take to plaintiff. On this particular phase of the case the defendant's attendant nurse corroborated the defendant by testifying that plaintiff's husband came on January 26 and asked the defendant for cough medicine, but on cross-examination she admitted that she did not understand English and only knew what had been said by what defendant had told her, and on motion her evidence on this point was stricken out. The jury probably concluded that the contention of the plaintiff on this particular point was correct and corroborated by the circumstance that on the following day, the 27th, the plaintiff suffering and having a high fever, her husband called in another physician to attend her. The evidence as we view it was so conflicting that the jury could have found a verdict for either party.

The ground for a new trial that the verdict is excessive we consider without merit. The plaintiff is shown to have suffered a great deal and to have lost time and earning capacity and if entitled to damages at all the amount awarded by the jury does not appear to be excessive, and from an examination of the record it does not appear to us that the amount of damages awarded was the result of passion or prejudice on the part of the jury.

The two grounds for a new trial mentioned in the motion, that the court improperly admitted immaterial evidence, failing to point out the evidence claimed to have been improperly admitted are too general to require consideration.

From statements made by counsel during the argument in this court it appears that the trial court concluded that the allegations of the complaint were not sufficient to ad-

mit evidence that defendant was guilty of negligence in not visiting plaintiff and attending her after January 15, but the record does not so show nor does it show that this question was raised at all in the trial court. If we should go out of the record to decide this question, which we are not authorized to do, we could very well say that the record shows that the case was tried on the theory that the defendant neglected the case after January 15; that both parties introduced evidence, the one to sustain this theory, the other to refute it; and that it is too late after verdict to raise this question; that if it was necessary to allege the fact specifically, which we do not decide, the omission was cured by the actions of the respective parties by introducing evidence and by the verdict (*County of Hawaii v. Purdy,* 22 Haw. 272, 286).

The evidence being conflicting and the record showing evidence sufficient to authorize the verdict the exceptions to the decision of the trial court on the motion for a new trial and to the order granting a new trial are sustained.

*Lorrin Andrews* (*Andrews & Pittman* on the brief) for plaintiff.

*J. Lightfoot* and *R. A. Vitousek* (*Thompson & Cathcart* and *Lightfoot & Lightfoot* on the brief) for defendant.