## VIRGINIA S. POOLER *v.*
## STEWARTS' PHARMACIES, LTD.

### No. 3079.

ARGUED MARCH 18, 1958.                    DECIDED JULY 8, 1958.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal by the defendant from a judgment for the plaintiff in an action for damages on account of injuries allegedly caused by defendant's negligence in filling a prescription for a drug.

The prescription was for six ¼ grain tablets of codeine. Defendant's employee erroneously filled the prescription with six ¼ grain tablets of morphine. Immediately upon discovering the error, defendant's employee informed the plaintiff that there was an error in filling the prescription,

without stating the nature of the error, and sought the return of the drug. When the plaintiff was informed of the error, she had already taken two tablets.

Plaintiff alleged two causes of action. Under the first cause of action, she sought to recover special damages for medical and hospital expenses and general damages for permanent injuries, pain and suffering. Under the second cause of action, she sought punitive damages.

The defendant requested the trial court to instruct the jury to find in its favor on both causes of action. The court granted defendant's request as to the second cause of action but denied it as to the first cause of action. Defendant made no objection to the denial. Nor did it object to any instruction given by the court to the jury. The jury returned a verdict for general damages under the first cause of action in the sum of $5,000. After the entry of judgment in accordance with the verdict, the defendant moved for a new trial. The court denied the motion.

On this appeal, the defendant questions the sufficiency of the evidence to support the verdict, first, as to the existence of liability for damages, and, second, as to the amount of damages.

Federal appellate courts do not consider the sufficiency of the evidence to support a verdict, insofar as it relates to the existence of liability for damages, in the absence of a motion for a directed verdict at the conclusion of the evidence. (Moore's *Federal Practice*, 2d ed., § 50.05[1]; Barron and Holtzoff, *Federal Practice and Procedure*, § 1081; *Baten* v. *Kirby Lumber Corporation*, 103 F. [2d] 272; *F. W. Woolworth Co.* v. *Seckinger*, 125 F. [2d] 97; *Woodbridge* v. *Du Pont*, 133 F. [2d] 904; *Meier & Pohlmann Furniture Co.* v. *Troeger*, 195 F. [2d] 193; *Smith* v. *Boggia*, 200 F. [2d] 604; *Een* v. *Consolidated Freightways*, 220 F. [2d] 82; *O'Malley* v. *Cover*, 221 F. [2d] 156; *Moore* v. *Louisville & Nashville Railroad Com-*

*pany,* 223 F. [2d] 214; *Zimmerman* v. *Emmons,* 225 F. [2d] 97; *Jacobson* v. *Yoon,* 41 Haw. 181)

The rule is succinctly stated in Barron and Holtzoff, *Federal Practice and Procedure, supra,* as follows: "It is well established that the sufficiency of the evidence is not reviewable on appeal unless a motion for a directed verdict was made in the trial court. There are sound reasons for this rule. The party who makes no motion for a directed verdict must be of the view that the evidence makes a case for the jury and should not be permitted to impute error to the court for sharing that view. The appellate court, therefore, is powerless to review the sufficiency of the evidence to support the verdict if the appellant made no motion for a directed verdict." Our requirement in this regard is the same. (*Jacobson* v. *Yoon, supra*)

In the instant case, the defendant did not move for a directed verdict at the conclusion of the evidence. Defendant's request for instruction to the jury to find in its favor on the first cause of action did not take the place of the motion. Even if the request is equated to a motion for a directed verdict, it is insufficient to lay a basis for appellate review for two reasons.

The first reason is that the defendant cannot assign the denial of its request for instruction as error. Rule 51 (e) of Hawaii Rules of Civil Procedure provides: "No party may assign as error the giving or the refusal to give, or the modification of, an instruction, * * * unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." As previously stated, the defendant did not object to the denial.

In *Reeve Bros.* v. *Guest,* 131 F. [2d] 710, the court stated: "Appellants complain of the court's failure to give certain requested charges submitted by them. While

the records show that such charges were submitted to the court, we have been unable to find the objections to the court's refusal to give the specially requested charges as required by Rule 51 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which rule requires that before the jury retires the complaining party must make his objection 'stating distinctly the matter to which he objects and the grounds of his objection.' The trial court's oral charge and failure to give the requested charges not being properly objected to below may not be made grounds for reversal here."

The other reason is that the record on appeal does not show that the defendant stated any ground for the request. Rule 50 (a) provides: "A motion for a directed verdict shall state the specific grounds therefor." The reason for this requirement is stated in *Virginia-Carolina Tie & Wood Co.* v. *Dunber*, 106 F. (2d) 383, as follows: "Prior to the adoption of this rule, there was conflict in the decisions of the federal courts as to the necessity for stating the grounds of a motion for directed verdict. * * * Rule 50 (a) has settled that conflict, however, by providing that 'a motion for a directed verdict shall state the specific grounds therefor.' * * * And we think it important that this requirement of the rule be observed, particularly in view of the enlarged powers granted the court with respect to such motions by rule 50 (b), as otherwise judgment might be entered on such a motion after the close of the trial and on a ground which could have been met with proof if it had been suggested when the motion was made. We do not mean to say that technical precision need be observed in stating the grounds of the motion, but merely that they should be sufficiently stated to apprise the court fairly as to movant's position with respect thereto. We doubtless have the power to consider such motion even though the grounds be not stated, if in our opinion this is

necessary to prevent a miscarriage of justice; but in ordinary cases, such as that which is here presented, the grounds of the motion must be stated to avail movant in this court."

The rule that requires a motion for a directed verdict as a prerequisite to appellate review of a verdict on the ground of insufficiency of evidence to establish liability for damages obviously has no application to a review of the verdict on the ground of excessiveness of the award, for the question of excessiveness does not arise until the verdict is returned.

Review of a verdict on the ground of excessiveness rests primarily with the trial court on a motion for new trial. Appellate review of a verdict on such ground is limited to a consideration as to whether the trial court committed an error of law or abused its discretion in granting or denying a new trial. (Moore's *Federal Practice*, 2d ed., § 59.08[6])

As previously stated, the trial court denied defendant's motion for new trial in this case. In Moore's *Federal Practice*, it is stated: "It is quite clear that a judgment may be reversed for any prejudicial *error of law*. Thus, where the verdict exceeds a statutory maximum, is more or less than an undisputed amount, is less than an admitted minimum amount, or is more than an admitted maximum amount, or where the excessiveness or inadequacy is apparently due to other legal error committed at the trial — such as the erroneous admission or exclusion of evidence or erroneous instruction — a failure of the trial court to grant appropriate relief on the motion for a new trial will be considered an error of law and the appellate court will order a new trial. When the verdict is in clear contravention of the court's instructions or is the result of passion or prejudice on the jury's part an appel-

late court will reverse for legal error." No such error appears in the record.

So, we direct our inquiry to the question as to whether the court abused its discretion in denying the motion. In pursuing such inquiry, we start with the following statement of Justice Brandeis in *Fairmount Glass Works* v. *Cub Fork Coal Co.*, 287 U. S. 474, at page 485, with which we agree: "Appellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of diligence and perspicacity in appraising the jury's conduct."

The weight that the United States Supreme Court gives to the action of the trial court is indicated in the per curiam opinion in *Neese* v. *Southern Railway Co.*, 350 U. S. 77. That was an action for wrongful death in which the jury returned a verdict of $60,000. On a motion for new trial, the district court denied the motion but ordered a remittitur of $10,000 and entered a judgment for $50,000. The court of appeals held that the district court erred in denying a new trial. (*Southern Railway Company* v. *Neese*, 216 F. [2d] 772) The issue as to damages was the present value of the amount that the deceased would have contributed to his parents during their lifetime had he lived. The deceased was in defendant's employment. He had an average annual take home pay of $2,181.60 for the three years that he worked before his death and would probably have attained an annual gross salary of $4,300 if he continued working for the defendant. The mother of the deceased testified that she expected the deceased to contribute as much as $2,500 per year for her support after her husband's retirement. The court of appeals considered that the mother's expectation was not reasonable. It thought that under optimum conditions an average contribution of $100 per month for the rest of the parents' lives might be assumed. Expert testimony of an actuary

indicated that the present cost of an annuity at 3½ per cent on the life of the mother, who was younger and therefore had a longer life expectancy than the father, which would yield $100.00 per month was $18,035.40. At 3 per cent the annuity would cost $19,051.00. Even on the assumption of loss of average annual contribution of $2,500 from the date of death of the deceased, and not merely from the date of the father's retirement, which the court considered fantastic, the award of $50,000 would have been in excess of the sum required to compensate for the loss. The present cost of an annuity to provide an income of $2,500 per year for the mother's life expectancy from the date of her son's death would have been $37,000 at 3½ per cent and $39,000 at 3 per cent. The court of appeals based its holding on such mathematical calculation. It stated: "A total contribution of $50,000 by young Neese to his parents, had he and they lived out their normal expectancies, seems to us far beyond the pale of any reasonable probability and entirely without support in the record." The Supreme Court, however, reversed the court of appeals on the ground that "the action of the trial court was not without support in the record, and accordingly that its action should not have been disturbed by the Court of Appeals."

In *Hulett* v. *Brinson,* 229 F. (2d) 22, certiorari denied, 350 U. S. 1014, the United States Court of Appeals of the District of Columbia followed the rationale of the Supreme Court in *Neese* v. *Southern Railway Co.,* and held that the trial court did not abuse its discretion in failing to order a new trial on the ground of excessiveness of the verdict. That was a case of malicious prosecution in which a verdict of $20,000 was returned principally on the testimony of the plaintiff, which was disputed. The court stated: "Tested by this standard, we hold that the action of the trial court in the present case, in denying the motion

for a new trial on the ground that the verdict was excessive, 'was not without support in the record.' While the verdict is certainly substantial, there was evidence which, if believed by the jury (as it apparently was), justified such a recovery."

The verdict in this case was for general damages, embracing items not subject to precise mathematical calculations, such as permanent injuries, pain and suffering. Plaintiff is a frail woman, weighing less than 100 pounds. In 1944 she received a chest injury in an explosion and in 1949 she had her entire left lung removed. Thereafter, she has not been in good health. She and her husband testified concerning the effect upon her of the taking of two $\frac{1}{4}$ grain tablets of morphine. She was hospitalized for 48 days after she took the morphine. There was conflict in expert testimony as to whether the hospitalization resulted from taking of morphine or from her prior physical condition. Plaintiff's principal witness was a reputable physician, of wide experience extending over a period of forty-one years. He testified that the morphine that the plaintiff took was a "tremendous" dose for a person in her physical condition. He further testified: "She was so depressed and was not well so that she re-entered Tripler Hospital again, and she was there, I think, for some 47 days or something like that. I don't know and can't say at all when the effects of that punishment, which I think is a fair word to use, when that punishment wore off. Because that punishment not only consisted in the depression of the central nervous system but it gave her a fear, a fright, which anybody who had ever had the feeling of being held under water or having their throat held, when the supply of oxygen has been cut off, knows what it is. Any layman knows that one of the most frightening things in the world is to be suffocated, and to have that sensation and fear, knowing that is a result that might last for years,

so far as I am concerned. I mean in my experience." Contrary testimony was given by defendant's witnesses, who are also reputable physicians, including three physicians who had personally treated the plaintiff.

By agreement of counsel, the jury was instructed that "the ultimate weight which is to be given to the testimony of expert witnesses is a question to be determined by the jury, and there is no rule of law which requires you to surrender your own judgment to that of any person testifying as an expert witness, or to give controlling effect to the opinion of expert witnesses." The jury, after a deliberation of almost six hours, concluded that the plaintiff suffered damages to the extent of $5,000. The trial court, which heard the witnesses and observed their demeanor did not see fit to disturb the verdict. We cannot say that the action of the trial court is without support in the record.

Defendant cites *Alau* v. *Everett*, 7 Haw. 82; *Marceil* v. *Freitas*, 9 Haw. 396; *Iaukea* v. *Cummings*, 9 Haw. 558; *Machado* v. *Mitamura*, 24 Haw. 224, in support of its position. In none of these cases was the verdict set aside.

Affirmed.

*Samuel P. King* (*Valdemar H. Myhre* with him on the brief) for appellant.

*David N. Ingman* (*Hyman M. Greenstein* with him on the brief) for appellee.