SHERATON HAWAII CORPORATION, A DELA-
WARE CORPORATION, AUTHORIZED TO DO
BUSINESS IN HAWAII, *v.* LOUANA POSTON
AND DIANA MONCADO.

No. 4789.

MAY 2, 1969.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ.,
AND CIRCUIT JUDGE OKINO ASSIGNED
BY REASON OF VACANCY.

OPINION OF THE COURT BY LEVINSON, J.

In November 1963, the present suit was brought under
a guaranty contract by the plaintiff-appellee (Sheraton)

against the defendant-appellant (Louana Poston) and another defendant who did not appeal (Diana Moncado). The contract, signed by both defendants as individuals, provided that they would guarantee performance of a lease between Sheraton and Ivories and Art Crafts, Ltd. (Ivories), a corporation of which the defendants were principal officers and stockholders. In April 1963, a suit for summary possession, delinquent rent, costs, interest, and attorneys' fees had been brought by Sheraton in the District Court of Honolulu. The court in that case rendered a judgment against Ivories on October 4, 1963 awarding Sheraton $5700 and terminating the lease as of May 31, 1963. The judgment has not been satisfied or appealed. Sheraton then brought this action in the circuit court against the guarantors to compel them to pay the money owed by the corporation.

Ivories had been conducting business in a shop located at the Princess Kaiulani Hotel under a lease which was due to expire on March 31, 1960. Three weeks prior to that expiration date, Poston was notified that the lease would not be renewed. She became distraught, although there is no evidence indicating she had been led to believe that the lease would be renewed. At the time of the notification, Ivories was offered space in the Royal Hawaiian shop area then being constructed. Apparently the understanding was that if Ivories agreed to lease one of the new shops at $1000 per month, it could remain at the Princess Kaiulani until the new shop was completed. Not wishing to go out of business or to relocate the store outside of Waikiki and feeling that the business had to be in the center of the area frequented by tourists and that no other suitable space was available, Poston and Moncado, on behalf of Ivories, agreed to take a lease in the new building. On April 5, 1960, Poston and Moncado appeared at the office of the leasing agent (Thacker) to sign the

lease on behalf of Ivories. After signing the lease, they were requested to sign the guaranty as individuals. When Poston and Moncado balked at this request, they were told that if they did not comply, the deal would be off and they would have to vacate the space at the Princess Kaiulani within three weeks. Finally they decided to sign the guaranty and they did so. Poston now claims that the guaranty was signed as a result of such business compulsion as would invalidate the guaranty. The refusal of the trial court to give certain instructions relating to business compulsion is specified as error.

Poston alleges that at the time she and Moncado signed the lease and the guaranty, both of which are embodied in one document, she was given a copy of the document. What later happened to that copy is the subject of some dispute. She claims that at the time she was told that the Princess Kaiulani lease would not be renewed, she was also told that the new shop would be 1000 square feet in area. She further claims that at a time after the lease and guaranty had been signed, someone from Thacker's office came to the store and asked for the return of her copy of the document because of an unspecified error in it. A few days prior to the return of the lease to her in May, Poston learned that the actual area would be approximately 850 square feet. The copy she subsequently received merely designated the shop as "shop No. 3" without specifying the square footage. There were, however, two sets of staple holes in the document indicating a restapling at some prior time. Poston alleges that the first copy of the lease she had been given spelled out the area as being 1000 square feet and claims that there was an alteration of the lease which should release her from any obligation on the guaranty.

With respect to the alleged alteration of the lease, the plaintiff, over defendant's objections, called as a witness

Frank Gibson, a law partner of the attorney trying the case for Sheraton. He testified that he had drafted the leases for the new shops including Shop No. 3 in the course of his duty as attorney representing Sheraton. He also testified that any reference in the lease to floor area was purposely omitted because of the difficulty of accurate measurement prior to construction and that he did not recollect any dealing with Thacker with respect to the Ivories lease or any changes made in square footage. Gibson further testified that the Ivories lease which Poston alleged was returned to her in May was identical with his own copy which never left his office. Poston objected both to the testimony of Gibson and the subsequent carrying on of trial duties by Sheraton's trial attorney based on Canon 19 of the Canons of Professional Ethics embodied in the Rules of this court by Rule 16. The overruling of her objections is specified as error.

The case was submitted to the jury and a verdict for $5700 in favor of Sheraton was rendered. A motion for judgment notwithstanding the verdict was made by Poston, but the motion was denied. The plaintiff moved for entry of a judgment for $9422.48 claiming to be entitled to the following items: $5700 for unpaid lease rent principal; $1661.55 for interest from June 1, 1963; $191.54 for attorneys' commissions upon principal and interest; $29.00 for circuit court costs; and $1840.39 for reasonable attorneys' fees as per lease. The court granted the motion and entered judgment for $9422.48. Poston objected to the inclusion of attorneys' fees, pointing out that attorneys' fees recoverable, if any, were included in the district court judgment for $5700 since that was prayed for in the original district court complaint. The defendant specifies the denial of her motion for judgment n.o.v. and the inclusion of attorneys' fees as error.

1. *Business Compulsion*

The court's instructions, as given, included some which would have permitted the jury to find for the defendants if they found business compulsion in this case. Despite the fact that such instructions were given, our view of the evidence compels us to conclude that it is insufficient to support any finding of business compulsion which would excuse the defendants from the guaranty contract. An essential ingredient of "business compulsion," a term of art, is duress or coercion in the origin of an alleged legal right. *London Homes, Inc.* v. *Korn,* 234 Cal. App. 2d 233, 241, 44 Cal. Rptr. 262, 267 (1965). Business compulsion is not necessarily established by proof that consent was secured by the pressure of financial circumstances, *Kohen* v. *H. S. Crocker Co.,* 260 F.2d 790, 792 (5th Cir. 1958). Ivories' lease at the Princess Kaiulani was not wrongfully terminated by Sheraton; it was merely scheduled to expire according to its terms. There was no evidence that Sheraton had obligated itself morally or legally to renew. The mere fact that Ivories' lack of planning permitted itself to be placed in an inconvenient financial position with limited choices for a new shop cannot and should not have the effect of a forfeiture of a legal right of Sheraton. Since there was an insufficient showing of business compulsion, no additional instructions relating to business compulsion, if indeed any instructions at all, should have been given.

*2. Canon 19 of the Canons of Professional Ethics.*

Canon 19 reads as follows:

*Appearance of Lawyer as Witness for His Client.* When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client.

There is no rigid rule that it is always improper, irrespective of the circumstances, for an attorney to appear as trial counsel in a case where his partner is a material witness, or for testimony to be given by the partner. In A.B.A. *Formal Opinion 220,* July 12, 1941, *Opinions on Professional Ethics* at 508 (1967 ed.), the committee on professional ethics opined that it is ethical for a law partner of an attorney representing a client to be a material witness testifying as to matters occurring in the course of his professional duties and that the attorney need not withdraw from the case if such testimony is given. In the present case, Gibson's testimony related only to matters occurring in the course of his professional duties as counsel for Sheraton.

Other courts have approved much more seriously questionable conduct than that which Poston is asking us to condemn in this case. There is significant authority approving the competency of testimony by a client's own attorney as a witness in his behalf, although such a practice is discouraged when the testimony or evidence could be procured from other sources. *United States* v. *Fiorillo,* 376 F.2d 180, 185 (2d Cir. 1967) ; *See Barthel* v. *Johnston,* 92 Idaho 94, 437 P.2d 366, 369 (1968). We believe in the circumstances found in this case, that it was proper to permit Gibson's testimony as well as the continuation of trial counsel in the case.

3. *Motion for Judgment N.O.V.*

The defendant claims that the motion for judgment n.o.v. should have been granted because "the preponderance of the evidence . . . clearly shows that there was an alteration in the lease document after its execution." By this motion, the defendant was attempting to test the sufficiency of the evidence to support the jury verdict. We are unable to take cognizance of this specification of error because of the defendant's failure to preserve her right to

appeal this question by moving for a directed verdict prior to submission of the case to the jury.

In *Pooler* v. *Stewarts' Pharmacies, Ltd.,* 42 Haw. 618, 620 (1958), this court warned that the sufficiency of evidence is not reviewable on appeal unless a motion for a directed verdict pursuant to Hawaii Rules of Civil Procedure, Rule 50(a) is made in the trial court. The reason given is that "[t]he party who makes no motion for a directed verdict must be of the view that the evidence makes a case for the jury and should not be permitted to impute error to the court for sharing that view." *Id.* The warning has been recently repeated in *Gelber* v. *Sheraton-Hawaii Corp.,* 49 Haw. 327, 333, 417 P.2d 638, 641 (1966) and in *Cozine* v. *Hawaiian Catamaran, Ltd.,* 49 Haw. 267, 269, 414 P.2d 428, 429 (1966). We implement the warning in this case.

*4. Attorneys' Fees*

The contract of guaranty provided that the guarantors would "pay all rent due or to become due" and guarantee "performance of all terms, covenants and conditions" of the lease. Clause 17 of the lease provides for the assessment of reasonable attorneys' fees against the losing party to be fixed by the court in the event of litigation in connection with the lease. The district court rendered a judgment of $5700 as the result of a suit filed by Sheraton whose complaint prayed for the delinquent rent, costs, interest *and attorneys' fees.* Thus a court of competent jurisdiction determined that the total liability under the lease was $5700 as of the date the judgment was rendered. Of necessity, the $5700 must have included any reasonable attorneys' fees due pursuant to Clause 17. Since the amount of liability of Ivories to Sheraton had already been determined by the court, collateral estoppel precludes relitigation of that issue by Sheraton in a subsequent suit against the guarantors. *Ellis* v. *Crockett,* 51 Haw. 45, 55,

451 P.2d 814, 822 (1969). The public interest requires that Sheraton be limited to one opportunity to test judicially the amount owing under the lease when litigation ensued.

The assessment by the circuit court of interest, costs, and attorneys' commissions was proper as in any ordinary case where a debt is claimed to be owing. The court, however, was in error in assessing interest from June 1, 1963. The time for the running of interest should have been measured only from October 4, 1963, the date the judgment in the district court was entered. The amount of attorneys' commissions should be reduced accordingly. The inclusion of the $1840.39 for reasonable attorneys' fees was error as discussed above.

All other specifications of error are without merit.

The case is remanded with directions to vacate the judgment and enter a judgment consistent with this opinion.

*Howard K. Hoddick* (*Robertson, Castle & Anthony* of counsel) for defendant-appellant.

*Willson C. Moore, Jr.* (*Henshaw, Conroy & Hamilton* of counsel) for plaintiff-appellee.