## SPRAGUE, WARNER & CO.

*v.*

## HENRY HAZENWINKLE.

1.   INSTRUCTIONS—*should be based on the evidence.*   It is not error to refuse an instruction which is not based on the evidence.

2.   PAYMENTS—*of their application.*   A creditor has the right to appropriate payments made on an account generally, where no specific directions have been given to apply them.

3.   SAME—*presumption as to their application.*   Where payments are made upon an open account, or there are several distinct debts existing, and neither the debtor nor the creditor has made any specific application of the payments, it would seem to be a reasonable presumption that the first items, or the debt first in point of time, should be first discharged.

APPEAL from the Circuit Court of McLean county; the Hon. JOHN M. SCOTT, Judge, presiding.

This was an action of assumpsit, brought to recover for goods sold and delivered. The facts of the case, generally, are fully stated in the opinion of the court.

The plaintiffs asked an instruction, designated in the series as the second, in respect to the application of payments, as follows:

" The court instructs the jury for the plaintiffs that, if they believe from the evidence, that the defendants owed the plaintiffs different debts, and have made several payments to the

plaintiffs, without designating the debts to which such payments should be applied, then the plaintiffs had the right to make the application of the payments to the debts as they pleased, and if the jury believe from the evidence, that neither the plaintiffs nor defendants made any specific application of the payments to the discharge of any particular debt or debts, the presumption is, that the first items of a running account, or that the debts which are first in point of time were to be thereby discharged."

The court refused to give the instruction, and that ruling is, among others, assigned as error.

Messrs. Weldon, Tipton & Benjamin, for the appellants.

Mr. Ira J. Bloomfield, for the appellee.

Mr. Chief Justice Breese delivered the opinion of the Court:

This was an action of assumpsit, brought to the circuit court of McLean county, at the March term, 1869, by Sprague, Warner & Company, against Mansfield J. Getchel and Henry Hazenwinkle, as late partners, doing business under the firm name of Getchel & Hazenwinkle. The declaration contained the common counts only. Hazenwinkle, alone, was served with process, and pleaded the general issue.

At the same term, plaintiffs took leave to amend their declaration by filing additional counts, but what those counts were, the record nowhere shows. The defendant, at the same time, presented his affidavit for a continuance, in order to procure the testimony of his co-defendant, Getchel, which was allowed.

At the next term, the defendant filed a further plea, averring that the supposed promises in the declaration mentioned were special promises for the debt of another person, to-wit: one Mansfield J. Getchel, and that no agreement in relation to the said causes of action in either count, or any memorandum or note thereof, was in writing, signed by the defendant, or by

any person in his behalf, substantially a plea of the statute of frauds and perjuries.

This plea was traversed, and issue joined thereon, and the jury found for the defendant.  The court refused to grant a new trial, and gave judgment against the plaintiffs, for the costs.

To reverse this judgment, the record is brought here by appeal, on a bill of exceptions, containing all the testimony.

It appears from the record, that appellants are merchants, doing business in Chicago, and, in September, 1865, had sold to Getchel, then doing business in Minneapolis, in the State of Minnesota, a bill of goods.  About this time, Getchel took in as a partner one Bowen, who remained in the concern about a month, when, in November, 1865, he sold out to the defendant, Hazenwinkle.  The firm name was, thereafter, Getchel & Hazenwinkle.  About the middle of June, 1866, Getchel sold out to Hazenwinkle.

It would appear that the goods bought by Getchel of the plaintiffs were in the store, or some of them, when Bowen sold out to the defendant, and remained there when the partnership of Getchel & Hazenwinkle was formed, and when the former sold out to the latter.

Getchel testifies, when he sold out to defendant, the defendant assumed this debt to plaintiffs, and to pay it, as well as the debts of the firm.  The defendant, who was also sworn as a witness, testified, when he bought out Getchel he only agreed to pay the debts of the firm, and not the debt in question.

The promise to pay the debts of his firm was of no importance, as he was legally bound to pay them, and no promise was necessary to enforce the obligation.

Defendant testifies that, after he had bought out Getchel, in the spring of 1866, the plaintiff sent an agent to Minneapolis to collect this debt, and wanted him to pay it.  Defendant told him he did not owe it, and would not pay it, yet, at that time, he voluntarily executed a mortgage to the plaintiffs on goods in the store to secure the payment of seventeen hundred and two

dollars, the amount claimed to be due on this account to the plaintiffs. The goods thus mortgaged, the defendant says, were goods left there by Getchel, which he had bought of plaintiffs; that he had sold them out and paid the money over to the plaintiffs, but what amount is not stated. If they were Getchel's goods, and had not passed to the defendant when he purchased Getchel's interest, and he did not own them, the inquiry is pertinent, by what authority he executed a mortgage on them? These goods were in the store when defendant bought out Getchel. They formed a part of their stock in trade, and became defendant's property, as completely as any other portion of the stock on hand at the time of the sale and purchase. Now, it is inconceivable that any man would give a mortgage on his own goods to secure a debt due from another, if there was not an agreement that he should pay the debt.

After this mortgage was executed, the defendant addressed a letter to the plaintiffs, of the date of July 2, 1866, in which he says: "I take this method to inform you of my circumstances. I have now paid off all my small debts, and it is my desire to make payment to you as I agreed upon, and further, if I can. But, as I look in the future, I feel discouraged, not knowing how I will come out at last, but I am willing to pay you; yes, your money you shall have." He then speaks of rebuilding the store, and trying to get a partner as soon as he could move into the new store; that he has written to his brother for money, and his inability to supply him, he being engaged in building a mill, and then writes: "In a letter which I received of him to-day, he is asking me to sell out and come back, and if I could invest with him $1500 or $1600, he assures me that I can make at least $1000 per year. Now, gentlemen, I would like to ask you once more for your kind favor, hoping it will be the last one. Now, if you would give me the privilege to sell out, I would give you all the money I could get together, over $1500 or $1600, the balance due to you I would pay you as agreed upon, you would then make it easier for me, and the same time give me a chance to make something, and not lose all I have got."

The construction put upon this letter by the defendant's counsel is quite ingenious, but we do not think it is reasonable. The defendant, in the letter, says not one word about wishing to invest with his brother in the mill, nor does he, in his testimony, allude to it. Such parts of the letter as we have quoted are taken from the record, and that furnishes no evidence that the copulative conjunction has been erased. The letter, as it appears in the record, is an acknowledgment of an indebtedness to plaintiffs, and if that indebtedness is not on account of this debt in suit, we can not understand how it could have existed, as the defendant testifies all the goods bought of plaintiffs by his firm were paid for in full.

The testimony of Getchel is strongly corroborated, we think, by the execution of this mortgage, and by this letter of July second, and should have determined the verdict in favor of the plaintiffs, on both the issues.

As tending to support the view taken by the defendants' counsel, of this case, a letter of the plaintiffs to Getchel is introduced in evidence, bearing date February 27, 1866. This letter was written some months prior to the execution of the mortgage by the defendant, and it is such an one as the plaintiffs or any creditors might properly write to a customer they had accommodated, even after he had formed a partnership, the terms of which the creditors did not know. We think the evidence greatly preponderates in favor of the plaintiffs, and a new trial should have been granted.

We cannot say there was error in refusing plaintiffs' second instruction. We do not understand that the evidence shows there was any other claim of indebtedness in controversy, except the one originally created by Getchel. Were there such other debts, then the instruction was proper and should have been given, for the rule being that a creditor has the right to appropriate payments made on an account generally, when no specific directions have been given to apply them, it would seem to be a reasonable presumption that the first items, or the debt first in point of time, should be first discharged.

No exceptions are taken to the instructions given on behalf of defendant.   For the reasons given, the judgment of the circuit court is reversed and the cause remanded, that a new trial may be had.

*Judgment reversed.*