**Muriel Groak, Plaintiff-Respondent-Appellee, v. Addison Groak, Defendant-Petitioner-Appellant.**

**Gen. No. 49,931.**

First District, First Division.

November 15, 1965.

Bellows, Bellows & Magidson, of Chicago, for appellant.

Joseph L. Goldberg, of Chicago, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Defendant filed a petition under section 72 of the Civil Practice Act for relief from a divorce decree, which he alleged contained a "mutual mistake." After an extended hearing, the trial court denied relief, and defendant appeals.

The decree was entered April 30, 1962. The petition was filed on July 30, 1963, in the original divorce action.

It alleges that a written agreement of the parties, included in and made a part of the divorce decree, contained erroneous language, i. e., "That said mutual mistake consisted of using the words 'the husband will pay all extraordinary medical, dental and hospital bills incurred by the wife *and* said minor children,' in said written agreement to express the intention and meaning of said parties as to the payment by your petitioner of extraordinary medical, dental and hospital bills incurred by the plaintiff, instead of words and language of the following tenor and import, to-wit: 'the husband will pay all extraordinary medical, dental and hospital bills incurred by the wife *for* said minor children." (Emphasis supplied.)

The trial court heard witnesses for both sides. The exhibits included: (1) the divorce decree entered by the court, which bears the approval of both parties and their attorneys, and included a "Memorandum of Agreement" and a written "Agreement," both documents signed by the parties and dated February 15, 1962; (2) the "Report of Proceedings had at the hearing" of the cause, heard on stipulation of the noncontested divorce action on April 6, 1962; and (3) various copies of the written agreement used by the parties during their negotiations, and correspondence between the attorneys.

In the order denying the petition, the court made a number of findings, which included:

"2. That said decree for divorce incorporated a certain property settlement agreement, which was designated as Exhibit 'A' containing pages designated as A through H inclusive; that said decree was duly approved in writing by all of the parties to this action and their respective attorneys.

"3. That on April 2, 1962, at the prove-up hearing, plaintiff was directly interrogated in the presence of the court and all counsel of record with

respect to paragraph 13 of Exhibit 'A,' which interrogation appears on page 8 of the Report of Proceedings.

"4. That the terms of the Divorce Decree are clear and concise.

"5. That the demeanor while on the witness stand and the reasonableness of her testimony compels the conclusion that MURIEL GROAK testified truthfully and that the evidence offered in her behalf must preponderate.

"6. That petitioner, ADDISON GROAK, has failed to respond to the Notice to Admit Facts heretofore served upon him on November 7, 1963, and said facts are deemed to be admitted as true.

"7. That petitioner, ADDISON GROAK, has not sustained the allegations of his petition by the requisite degree of proof and is not entitled to the relief sought."

On appeal, petitioner contends: "(1) The finding of the trial court that the petitioner did not sustain the allegations of his petition by the requisite degree of proof is clearly against the weight of the evidence and was occasioned by the trial court's capricious disbelief of an unimpeached, disinterested witness whose testimony one of ordinary intelligence could not possibly challenge or entertain the slightest doubt as to its truth. (2) The trial court erred in refusing to permit the petitioner to give parol evidence concerning the terms of the separation agreement."

■■ Upon proper grounds, relief from a final divorce decree after 30 days from the entry thereof may be had upon petition, as provided in section 72 of the Civil Practice Act. (Collins v. Collins, 14 Ill2d 178, 151 NE2d 813 (1958); Van Dam v. Van Dam, 21 Ill2d 212, 171 NE2d 594 (1961); Plavec v. Plavec, 30 Ill App2d 345, 348, 174 NE2d 578 (1961).) We believe a proper ground for relief to be a divorce decree which incorporates a written

442

agreement which fails to express the real intention of the parties "through mutual mistake, or through mistake of one side and fraud on the other," and "where the proof clearly and convincingly shows that a mistake was made, and that it was mutual and common to both parties." Harley v. Magnolia Petroleum Co., 378 Ill 19, 27, 28, 37 NE2d 760 (1941).

Defendant-petitioner's principal witness was the former attorney for plaintiff-respondent. The trial court sustained an objection to the testimony of this witness as to conversations between him and his client on the ground of attorney-client privilege. An offer of proof was made, and later in the proceedings, the court admitted the offer of proof in evidence.

The testimony of respondent's former attorney was to the effect that in discussions with him, plaintiff kept saying, "I want medical care for myself." He told her, "I couldn't do it; she either takes it or leaves it. And she finally said, 'If that's all you can do, that's all you can do.' And I drafted those things into the contract for settlement." After the agreement was typed up, he noticed that his secretary had made an error. He, without consulting plaintiff and in his handwriting, changed one copy of the agreement by writing the word "for" over the typewritten word "and," so that the changed copy read, "the husband will pay all extraordinary medical, dental and hospital bills incurred by the wife *for* said minor children," instead of "incurred by the wife *and* said minor children." (Emphasis supplied.) He told his secretary to make "all copies—the original and all the copies conform to the way I changed it," and to mail copies to counsel for the defendant-petitioner for signature and later exchange of signed copies. However, a slip-up in his office resulted in no change being made in the original or copies—"the others were not changed." The agreement in its unchanged form was proved up at

443

 ⟍

the divorce hearing by an associate counsel, who was unfamiliar with the settlement negotiations.

Defendant-petitioner testified that he had received a copy of the divorce decree with a copy of the agreement attached to it, but that he had been unable to find it. He stated that prior to the entry of the divorce decree, he had discussed its terms with his attorney. An objection was sustained to the question, "Did you agree at any time to pay for your wife's extraordinary medical expenses?" On or about November 9, 1962, he paid $421.26 to plaintiff for her medical expenses, which resulted from an automobile collision, and in return she assigned to him insurance policy proceeds, which proved to be worthless. He stated, "I figured I might as well pay the medical bills and get the waiver on the insurance and not argue with her."

On cross-examination, he was shown a certified copy of the divorce decree, and he said it was not identical with the copy received by him; "in Paragraph 13, the copy that I had had the word 'and' written over with the word 'for.' "

On inquiry by the court, defendant said he had read the agreement "and I signed all the copies I was supposed to sign," and had not initialed any changes. He insisted that the misplaced divorce decree copy, which he had received from his lawyer, was "a photostat, and it had this in Paragraph 13, it had the word written over." He discovered the mistake in June 1963, after plaintiff had demanded payment of $1,200 medical expenses, of which $500 were for plaintiff and $700 for the children.

Plaintiff-respondent testified there was no written change on her copy of the divorce decree or on the original or copies of the agreement signed by her. She denied having any discussion with her former attorney "with respect to extraordinary medical expenses." She admitted assigning her insurance policy to the defendant to reimburse him for her medical bills paid by him in

444

November 1962. It was during her cross-examination that the court ruled the testimony of her former attorney might be received in evidence "in order to get all the facts here, to be fair to the defendant petitioner."

The divorce decree report of proceedings shows that plaintiff identified the written agreement and the signatures of the plaintiff and defendant. The associate counsel of her former attorney questioned her in detail about the terms of the agreement, including: "Q. He agrees to pay all medical and hospital bills for you and the children? A. Yes." The report shows that an associate of defendant's present attorney also appeared at the hearing.

Examining the exhibits received and offered in evidence, we note the only place the asserted change appears is on defendant-petitioner's Exhibit 6 for identification, a certified copy of the decree. Plaintiff's former attorney, the only person who allegedly made any change, testified that the word "for," written in ink and appearing on that certified copy (page F), was not in his handwriting. The alleged ink change in paragraph 13 does not appear in (1) the original court decree; nor in (2) the report of proceedings at the prove-up hearing; nor in (3) plaintiff's certified copy of the decree.

In denying defendant's petition, the court repeatedly expressed its disbelief of the testimony of plaintiff's former attorney. The remarks of the court include: "I cannot give his testimony any credence whatsoever. I do not know what motivated him. I do not know why he did it; I do not know why he came forward, without giving his client, who has a right to claim the privilege, an opportunity to either waive or claim privilege. I do know that his testimony was remarkable, indeed . . . ." Also, "This is a serious thing. You want this Court to take the testimony offered by Mr. . . . , contradicted by this lady, and say, 'Yes, that change was made.' They

cannot even say who made the change on the various documents."

We note here that the testimony of the plaintiff's former attorney as to conversations between him and her related to professional communications between attorney and client and were privileged communications to be protected as the privilege of the plaintiff-respondent. (Wisconsin Lime & Cement Co. v. Hultman, 306 Ill App 347, 28 NE2d 801 (1940).) However, as the trial court rejected this testimony as not worthy of belief, its admission was not prejudicial to plaintiff-respondent.

A court of review will not reverse the findings of a trial judge, who saw and heard the witnesses, unless it is clear that such findings are palpably contrary to the evidence. (Quist v. Streicher, 18 Ill2d 376, 380, 164 NE2d 44 (1960).) Also, where the trial judge has seen and heard the witnesses and the testimony is contradictory, this court will not substitute its judgment as to the credibility of witnesses for that of the trial judge. Brown v. Zimmerman, 18 Ill2d 94, 163 NE2d 518 (1959).

From our examination of this record, it is evident that the findings of the trial judge, who saw and heard the witnesses, were substantially supported by the evidence and are not palpably contrary to the evidence.

For the reasons given, the order appealed from is affirmed.

Affirmed.

BURMAN, P. J. and KLUCZYNSKI, J., concur.