CHICAGO CENTRAL C.F.M. INC., Plaintiff-Appellee, *v.* FRANKLIN KIMMONS *et al.*, Defendants-Appellants.

(No. 58463;

First District (4th Division)—January 23, 1974.

Roger B. Harris, Kenneth R. Gaines, and Clyde D. Stoltenberg, all of Chicago (Altheimer, Gray, Naiburg & Strasburger, of counsel), for appellants.

Lott, Powell & Williams, of Chicago (Carl McCormick, of counsel), for appellee.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

This appeal arises from a suit filed pursuant to the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1971, ch. 57, § 1 *et seq.*) in which the plaintiff sought possession of a store premises it had rented to the defendants-appellants. The plaintiff joined a claim for rent in the amount of $3,697.21 which was later amended to increase the sum claimed to $5,793.88 covering a period from 1969 to the end of the first six months of 1972. The trial court found in favor of the plaintiff and awarded a judgment of $5,793.88 plus costs and entered an order of possession in favor of the plaintiff. The defendants maintain that the trial court erred in receiving evidence as to the plaintiff's claims for franchise fees, separate and apart from possession and rent, in a suit under the Forcible Entry and Detainer Act because the statute bars the consideration of such claims. Defendants also contend that certain of the plaintiff's exhibits were incompetent and should not have been received in evidence. The final issue raised by the defendants is that the law in Illinois governing application of payment requires that certain rebate checks of the defendants should have been credited against the percentage rentals claimed by the plaintiff.

In April of 1969, the plaintiff leased certain store premises to the defendants for a term of 15 years and at the same time a franchise agreement was entered into providing for the operation of a "Convenient Food Mart" grocery store at the leased premises. The rental terms of the lease stated that the defendants were to pay a fixed basic monthly rental, a percentage rental based on a percentage of gross sales and increases in real estate taxes. Under the franchise agreement the plaintiff was the franchisor and the defendants were the franchisees. In June of 1972, the plaintiff through its attorney, sent the defendants a letter advising them that they were in arrears in their franchise and percentage rental payments. On July 7, 1972, the plaintiff served the defendants with a five-day notice on account of the breach of the lease. Subsequent to receiving the five-day notice the defendants paid and the plaintiff accepted the basic monthly rental of $550.00 a month. On August 23, 1972, plaintiff filed suit to regain possession of the leased premises and for the percentage rentals it claimed were due.

At the trial the plaintiff's president, A. Cortez Simmons, testified that after the plaintiff's attorney sent the letter advising the defendants that they were in arrears as to the franchise and percentage rental payments no percentage rental payments were received by the plaintiff. It was the

testimony of Mr. Simmons that $5,793.88 was the amount of percentage rentals that the defendants owed the plaintiff. After proving that the proper demand and notice of rent due was served upon the defendants, the plaintiff rested.

Mr. Simmons was called as an adverse witness under section 60 of the Civil Practice Act by the defendants. It was established upon this examination of Mr. Simmons that the plaintiff came into possession, endorsed, and received the proceeds of a series of rebate checks for milk purchases issued by the Meadowmoor Dairy to the defendants totalling $8,063.17. The checks covered a period from September 16, 1969 to September 16, 1971. The plaintiff did not remit the money obtained from cashing these checks to the defendants nor did it inform the defendants that these funds existed. Mr. Simmons testified that the amount of these checks were credited to the defendants' account. The defendants' counsel asked what account Mr. Simmons was speaking about and he replied the franchise fees and real estate taxes account. However, the defendants introduced a group exhibit of the invoices from the plaintiff to the defendants for franchise fees covering a period from July of 1969 through September of 1971. The defendants also introduced a sheaf of checks from the defendants to the plaintiff which were in the amounts of the bills for franchise fees. The defendants maintained that these checks represented payment by them of the bills for franchise fees and after a strained colloquy between Mr. Simmons and the defendants' counsel, Mr. Simmons did admit, that the franchise fees had been paid through August of 1971. It was also brought out that the franchise fees from and after September 1971 were the subject of an anti-trust suit pending in the Federal District Court for the Northern District of Illinois. When Mr. Simmons was cross-examined by the plaintiff's counsel, the franchise agreement for the "Convenient Food Mart" was introduced into evidence and it was established that it contained a provision that if there was a default in franchise fees, the plaintiff was entitled to contact all purveyors doing business with the defendants and to notify them to forward all rebates to the plaintiff until all sums due are fully paid. It was also at this time that plaintiff's exhibits 7 and 8 were introduced into evidence. Exhibit 7 was described by plaintiff's attorney as a "recapitulation of the franchise fees and the application of a credit from rebates" and exhibit 8 was denominated "An Application of Rebates to Real Estate Tax." Mr. Simmons read into evidence the data contained on these exhibits. The defendants' counsel objected to the admission of all these exhibits on the basis that the plaintiff could not bring in a franchise agreement in a forcible entry and

detainer case. The trial court ruled it was not going into the franchise agreement and admitted the exhibits.

The defendant, Franklin Kimmons, testified and stated that the checks received by the plaintiff from the Meadowmoor Dairy were the defendants' percentage rental payments. Mr. Kimmons also testified that through August of 1971 all franchise fees had been paid by separate checks and that during the period of time that the rebate checks were received by the plaintiff, no franchise fees were owed. Mr. Kimmons did state that since September of 1971 no franchise fees had been paid due to the anti-trust litigation pending in the Federal Court. The trial court, as previously stated, found in favor of the plaintiff and awarded a judgment of $5,793.88 plus costs and entered an order of possession in plaintiff's favor.

■■ Following a logical sequence we should initially determine the first issue raised by the defendants. However, since this court is of the opinion that the third issue raised by the defendants is determinative of the controversy the case may be dealt with more expeditiously if we consider this issue first. The defendants maintain that the evidence introduced at trial established that no franchise fees were owing to the plaintiff against which the rebate checks could have been credited during the time period in which they were received. Defendants also contend that the law in Illinois governing application of payment between a creditor and debtor requires that the rebate checks of the defendants be credited against the percentage rentals claimed by the plaintiff. While we are mindful that a reviewing court should not reverse the findings of the trial court unless such findings are palpably contrary to the evidence (*Quist v. Streicher*, 18 Ill.2d 376, 164 N.E.2d 44 (1960); *Groak v. Groak*, 64 Ill.App.2d 439, 212 N.E.2d 139 (1965)) under the facts of this case we must agree with the defendants' contentions.

The defendants introduced into evidence the bills from the plaintiff for franchise fees for the period beginning in July of 1969 and going through September of 1971. The defendants' checks to the plaintiff in full payment of these bills were also admitted into evidence. In addition the plaintiff's president admitted that all franchise fees had been paid through August of 1971. When this evidence is considered together with the fact that the claim for rent due was $5,793.88 and that the plaintiff had in its possession the proceeds from certain rebate checks belonging to the defendants which totaled $8,063.17, it becomes clear that the latter amount more than adequately covered the claimed percentage rentals. The evidence adduced at the trial established that all franchise fees through August of 1971 had been paid and that the plain-

tiff appropriated $8,063.17 of defendants' money. Since the evidence shows that there was no account owing except percentage rentals during the period in which the defendants' rebate checks were endorsed and cashed by the plaintiff this amount could only have been applied to the percentage rental account. In light of this evidence, to hold that the plaintiff was still entitled to $5,793.88 as percentage rentals was palpably contrary to the evidence.

The Illinois law pertaining to the application of payments between debtor and creditor was adequately set forth in *Village of Winfield v. Reliance Insurance Co.*, 64 Ill.App.2d 253, at 258, 212 N.E.2d 10, at 12 (1965). It was there stated:

" 'Where a debtor makes a payment to his creditor, to whom he is indebted on several accounts, he has the right to indicate upon which item the payment shall apply. If he does not do so, the creditor may ordinarily select the item, and if no selection is indicated by either, the law will apply the payment as may seem reasonable and just. And in such cases the application will ordinarily be made upon the item first due. *Lowry v. Gear*, 32 Ill. 382; *Bayley v. Wyncoop*, 5 Gil. 459; *Sprague v. Hazenwinkle*, 53 Ill. 419; *Bonnel v. Wieder*, 67 Ill. 327.' "

Therefore, even if there had been two accounts owing, the defendants would have had the right in the first instance to make the election as to which account a payment should apply. However, as has already been indicated there was only one account owing—the percentage rental account.

It is true that no franchise fees have been paid since September of 1971 and the reason given was that these fees were the subject of a suit pending in the Federal District Court. However, the fact that the fees had not been paid since September of 1971 does not aid the plaintiff in its claim. It was held in *Halsted v. Griefen*, 173 Ill.App. 551, at 556 (1912) "* * * that a creditor cannot apply a payment to a debt not then payable if there be another then due, nor retain the payment in his hands to apply on a future indebtedness, leaving a prior demand unpaid; * * *". During the period in which the plaintiff came into possession of the $8,063.17 that belonged to the defendants there were only percentage rentals owing and therefore, the plaintiff could not retain this amount and apply it to future franchise fees not then due and payable. The only account to which the plaintiff could apply the $8,063.17 was the percentage rental account. It is also of no aid to the plaintiff that an entry was made on its books showing that the $8,063.17 was credited to the franchise fees account. The record is reticent as to any communication of this fact to the defendants by the plaintiff and

without such communication the election of appropriation is not conclusive. *Reiss v. Scherner*, 87 Ill.App. 84 (1900).

The trial court's decision was palpably contrary to the evidence and its decision must be reversed and the case remanded. The plaintiff's claim for possession was predicated on its claim that the percentage rentals were overdue and since we have determined that the percentage rental account was not delinquent the trial court's order of possession must be reversed. The defendants' contention that there was no franchise fees due to which the amount of the defendants' rebate checks could be applied and that the law in Illinois regarding the application of payments between a creditor and debtor requires that the amount of the rebate checks be credited to the percentage rental account is dispositive of the case and we, therefore, deem it unnecessary to decide the other issue raised by the defendants. For the reasons herein stated, the judgment of the Circuit Court of Cook County is reversed and the case remanded for entry of judgment in favor of defendants.

Reversed and remanded.

BURMAN and JOHNSON, JJ., concur.