UNION TRUST COMPANY, LIMITED, AND F. B. CARTER III, RECEIVER OF UNION TRUST COMPANY, LIMITED, v. FRANK NICHOLS, LIMITED, ET AL.

No. 2432.

SUBMITTED MAY 4, 1940.                    DECIDED JULY 9, 1940.

COKE, C. J., PETERS AND KEMP, JJ.

OPINION OF THE COURT BY KEMP, J.

On September 28, 1931, Samuel G. Wight and Agnes

B. Wight conveyed to Union Title and Land Company, Limited (hereinafter called the land company), 19 acres of land on Molokai for a recited consideration of $6500. Of said $6500 J. S. Mackenzie, J. H. Fiddes and Rudolph Duncan paid $2750 and executed to the land company their joint and several promissory note for $3750, payable three years after date, together with 8% interest payable quarterly. On the same day the land company entered into an agreement with Mackenzie, Duncan and Fiddes (hereinafter called the first parties) whereby the land company acknowledged that it held title to said land in trust and as trustee for the use and benefit of the first parties upon the trusts therein expressed and set forth. Said agreement recites in substance that the land company held the title to said land as security for the payment of the promissory note for $3750 above described, such title to continue and remain vested in it until the full payment of said promissory note and to then be conveyed to the first parties or to such person or persons as they may, in writing, designate; that the land company is hereby appointed the agent of the first parties, with authority to sell and dispose of said land "or any part thereof for such amount and upon such terms as in its judgment shall seem best, subject, however, to the consent of the said parties of the first part as to amount and terms"; that upon the sale of said land, whether for cash or upon terms, the land company to receive a commission of 5% of the aggregate amount of such sale as full compensation for its services as agent and trustee; that in the event of any breach by the first parties in the payment of the $3750 promissory note, or any part thereof within the time therein specified, the land company is authorized to sell and dispose of the whole or such portion of the land as may be necessary to obtain sufficient funds to pay all amounts due to it in accordance with the terms of said

promissory note, any expense incurred by it in connection with any such sale and a commission of 5% upon the amount realized at the sale, the surplus, if any, to be delivered to the first parties, any deficiency to become a lien upon and charge against the property and estate of the first parties, and the land company may have judgment in any court of competent jurisdiction against the first parties for the amount of such deficiency; that the first parties shall reimburse quarterly the land company for all costs and expenses incurred by it in the payment of taxes, assessments, sewer and other rates, encumbrances and charges to whomsoever assessed or chargeable, whether on the said land or any interest therein or income therefrom or on account of the debt secured hereby, and in the event of the failure of the first parties to pay such sum as may be expended on this account at the next succeeding quarterly period, the amount due shall bear interest at 12% per annum and such sum, together with interest, shall be a charge upon the land herein described in addition to the principal sum and interest to grow due upon the initial indebtedness herein specified and secured, to be paid in like manner as such initial indebtedness; that no purchaser at any sale made pursuant to the terms hereof, except the land company, which may also become a purchaser, shall be bound to see to the proper application of the proceeds of any such sale, and that the terms and provisions hereof shall run to and bind the first parties, their heirs, executors and administrators, and the said land company, its successors and assigns.

On May 9, 1932, Rudolph Duncan died intestate, leaving him surviving his widow, Sarah E. Duncan, and the following heirs: Rudolph W. Duncan, Olive H. Verble, Helen A. Bartle, Thelma L. Duncan (now Thelma L. Duncan Meyers), Julia (Juliet) M. Beers and James A. W. Duncan, a minor.

On September 12, 1932, the two surviving first parties, the widow and the adult heirs of the deceased, Rudolph Duncan, borrowed $1200 from the land company and executed their joint and several promissory note therefor. The document executed by the land company, the two survivors of the first parties and the widow and adult heirs of the deceased, Rudolph Duncan, recites in substance that said money was borrowed for the purpose of paying the expense of clearing, surveying, subdividing and selling the said land; that the initial indebtedness of $3750 had been reduced to $2876.14 and that in consideration of the additional loan of $1200 it was agreed and declared that all of the said land shall be chargeable with the repayment of said additional $1200 within two years, with interest at 8% per annum, payable quarterly, as provided by their joint and several promissory note of even date and made a part hereof, and that all the terms, covenants and conditions of said trust agreement are hereby incorporated herein by express reference and shall be applicable as a part hereof, as well to the additional sum of $1200 as to the original advancement of $3750 as fully as if said trust agreement had originally been made to include the entire loan of $4950 and interest thereon, and that the said land shall not be redeemable nor said trust agreement terminated until the full payment by them of the said sum of $3750, together with interest thereon, and the sum of $1200 this day loaned and secured hereby; that these presents shall be binding upon and inure to the benefit of the parties herein named and their respective legal representatives, successors and assigns.

On January 31, 1936, the land company conveyed to Union Trust Company, Limited (hereinafter called the trust company), the land hereinbefore referred to, excepting certain portions theretofore sold, assigned the trust agreements hereinbefore described and endorsed and de-

livered to said trust company the two promissory notes above described.

On May 4, 1938, F. B. Carter III was by decree of the circuit court, first judicial circuit, appointed receiver of said trust company and is now the duly constituted and appointed receiver of said trust company.

On September 23, 1938, the said receiver filed his bill in equity for the foreclosure of the liens created by said agreement of September 28, 1931, and the additional charge of September 12, 1932. The bill alleged all of the foregoing and that there was due and unpaid on August 30, 1938, upon said agreement and promissory note of September 28, 1931, the sum of $2885.93 on account of principal, and accrued interest in the sum of $998.40, and upon said additional charge and promissory note of September 12, 1932, the sum of $476.13 on account of principal and accrued interest in the sum of $142.78. Parties respondent are the two survivors of the first parties, the widow and heirs of the deceased first party, their wives and husbands, and certain other persons claiming an interest in said land by virtue of recorded judgments against Fiddes, Mackenzie and Arthur Freitas, assignee of Mackenzie.

The answer of the widow and heirs of the deceased, Rudolph Duncan, and their husbands and wives, admits that the petitioner is the duly constituted and appointed receiver of Union Trust Company, Limited; the terms of the agreement of September 28, 1931, as alleged; the death of Rudolph Duncan, as alleged, and the execution of the promissory note for $1200, dated September 12, 1932, as alleged. The answering respondents neither admitted nor denied the other allegations and left petitioner to his proof.

George T. Coulter, one of the respondents, answered admitting that he claimed an interest in said land by virtue of a judgment lien and alleged that his lien was

perfected September 9, 1932; that his lien was superior to all liens recorded subsequent thereto and especially the additional charge of September 12, 1932, one of the liens sought to be foreclosed. His prayer was that in case a decree of foreclosure and sale be entered as prayed, the proceeds of sale which may remain after the payment of the sum due on the note for $3750 secured by the agreement of September 28, 1931, be applied towards the payment of his judgment lien. No other respondents answered or otherwise appeared.

An order *pro confesso* was entered against all defaulting respondents.

On May 24, 1939, the cause came on for hearing on the bill and the above two answers. At the hearing the evidence established and the interlocutory decree that day entered recited, in substance, that the agreement of September 28, 1931, is a declaration of trust and mortgage given to secure the $3750 note declared upon; that the agreement and promissory note for $1200 of September 12, 1932, declared upon is an additional charge under the declaration of trust and mortgage dated September 28, 1931; that the two notes and mortgages had by mesne assignments passed to Union Trust Company, Limited, now in the hands of a receiver, F. B. Carter III, and that default had been made in the payment of the amounts secured thereby; that subject to certain reservations set forth below there was at that date, May 24, 1939, due on said $3750 note the principal sum of $2876.14 and $1167.14 of interest, or a total of $4043.28 of principal and interest; that subject to said reservations there was at that date due and unpaid on said $1200 note the principal sum of $476.13 and $170.23 of interest, or a total of $646.36 of principal and interest; that the receiver had advanced $101.32 for taxes and had received $50.11 since filing his bill, leaving a net grand total of $4740.85 due on account

of the two notes and advances; that the complainants are entitled to a foreclosure of the two mortgages and to have the mortgaged premises sold to satisfy the said indebtedness.

The balance due on the two notes was made to appear by showing that on September 30, 1932, the land company credited said $3750 note with $873.86 received from sales prior to September 12, 1932, as shown by recitals in the additional charge, and that the land company applied moneys thereafter received to the payment of interest on said $3750 note, the last application being May 30, 1934. The land company also applied moneys received from the sale of lands to the principal of the $1200 note as follows: $173.10 on December 31, 1932; $488.41 on November 1, 1933; and $62.36 on February 8, 1934. It also applied money to the payment of interest on said note. All applications were made prior to the assignment of the mortgage to the trust company. A commissioner was appointed to sell the land remaining unsold, subject to confirmation by the court.

The reservations hereinabove referred to are, in substance, that the parties all agree that the complainants' mortgage of September 28, 1931, is a lien superior to all other liens claimed by any party in this case upon the property mortgaged to secure the amount due thereon after crediting all moneys received by complainant which have been or properly should be credited to the account of said $3750 note and mortgage, but the parties herein not being in agreement as to what sum or sums so received by the complainants should be credited to the note and mortgage for $3750, the right is hereby expressly reserved to George T. Coulter, Territorial Building and Loan Association, Limited, and the widow and heirs of Rudolph Duncan to present to this court, after the foreclosure sale is had and confirmed, their claims "based upon the evi-

dence both oral and written herein presented on the said 24th day of May, 1939, concerning the receipts of money which should or should not be credited to the said $3750.00 note and mortgage of September 28, 1931, and or to the said $1200.00 note and mortgage of September 12, 1932, respectively, and with reference, therefore, to the total amount, being principal, interest and taxes, which is now due, unpaid and secured by the Complainants' said mortgage and or lien of September 28, 1931. This right to present the claims aforesaid just mentioned shall exist and be applicable only if the net returns from the Commissioner's sale herein shall prove, after deduction of the Commissioner's fee and other expenses of sale, to be more than sufficient to reimburse the Complainant for the admitted amount of his said superior lien plus costs of Court and attorneys' fees.

"Leave is likewise expressly reserved for the above mentioned members of the Duncan family, represented by Mr. E. R. McGhee, to present (with argument in support thereof), after the foreclosure sale is had and confirmed, any contentions that they may wish to make by way of seeking to diminish or limit the amount of the deficiency judgment that may be asked for by the Complainants against the said Duncan family."

On July 19, 1939, the commissioner reported a sale of the land for $2600. On July 28, 1939, a decree, called a final decree, confirming the sale and ordering the commissioner to convey the land to the purchaser, was entered. In said decree the commissioner was ordered to apply $375.81 of the proceeds of sale to the payment of his fees, expenses and court costs, $500 to the attorney for the receiver as his fee herein, $20 to V. Fernandes for services rendered, and $62.44 to the receiver for taxes paid by the receiver for the second half of 1938 and the first half of 1939. The remainder of said proceeds, being

the sum of $1641.75, after payment of fees, expenses, taxes and costs aforesaid, was ordered paid to the receiver. It was also ordered that the judgment lien holders take nothing. The decree then entered recited that a supplemental decree would be entered later directing the manner of the application of the $1641.75 by the receiver as between the two promissory notes, and that the supplemental decree would also provide for and include such a deficiency judgment or judgments as petitioner may be found to be entitled as against any one or more of the respondents. No mention was made in this decree of the application of moneys which were the subject of the reservation in the interlocutory decree.

On August 11, 1939, further hearing was had and on August 15, 1939, deficiency judgments were entered. At this hearing the judgment lien holder who raised the question of the proper application of the moneys received did not appear, and counsel for petitioner informed the court that "He is not interested; he doesn't care. He told me he would not appear." Petitioner thereupon produced evidence showing that if all moneys received from the sale of lands prior to the filing of his bill were applied to the $3750 note, there would remain unpaid thereon $1973.66 of principal and $811.74 of interest, as of July 28, 1939, leaving, after application of the net proceeds of the foreclosure sale, a deficiency of $1152.42. Counsel for the Duncan heirs contended that the petitioner was estopped by his pleadings, evidence and the former decrees from claiming the right to change the application of the moneys received from the sale of portions of said land made by the land company, as shown by petitioner's evidence, and that the deficiency judgment against the Duncan heirs should be limited to the sum of $476.13 and $170.23, the principal and interest alleged and shown to be due and unpaid on said $1200 note on the date of the decree, or a

total of $646.36. He also contended that the application of the payments having been made, they cannot thereafter be changed without the consent of all parties and called attention to the fact that the judgment lien holder who raised the question of the proper application of the payment had abandoned his claim because the condition set forth in the interlocutory decree upon which the application of payments was to be considered did not materialize, *viz.*, that the land sell for more than enough to satisfy the amount admitted by all parties to be due on the first mortgage. The question of the application of the net proceeds of the foreclosure sale to the two notes, the question reserved for further consideration in the decree confirming sale, was not thereafter considered and the assignments of error do not challenge the correctness of the application of said proceeds to the $3750 note.

The circuit judge expressed the view that because the interlocutory decree reserved to the Duncan family the right, after foreclosure sale and confirmation, to present (with argument in support thereof) any contention they may wish to make by way of seeking to diminish the amount of the deficiency judgment against them, the petitioner was thereby given the right to seek to increase the amount due and owing on the $1200 note beyond the amount alleged in his bill and shown by his evidence, by shifting credits made thereon by the land company from said note to the $3750 note. He also expressed the view that the facts developed at the original hearing raised the presumption that the crediting of any of said moneys to the $1200 was "tinged with illegality" and that in the absence of a showing by the Duncans of facts which would overcome that presumption he would hold that the money should have been applied to the first mortgage "so as to relieve that or pay off that first mortgage, and give the judgment lien holder his chance to come to the top."

Counsel for the Duncan heirs thereupon produced evidence of four of the Duncan heirs, which was uncontroverted, to the effect that they were induced to sign the $1200 note by the agreement of the land company to credit all moneys thereafter received from the sale of portions of said land to said $1200 note until it was paid; that the moneys received by the land company were so credited and that on September 13, 1934, the land company sent them a statement which they produced showing that said note had been reduced to $476.13. They also testified that they, at that time, had no actual knowledge of the existence of the judgment lien against the interest of Mackenzie and Fiddes then of record.

The circuit judge found that the agreement testified to was illegal; that the presumption was to that effect and the evidence has, in place of contradicting and overthrowing that presumption, established it as a fact. He thereupon ordered all credits theretofore entered upon the $1200 note transferred to the $3750 note and entered a supplemental decree containing a deficiency judgment against Mackenzie and Fiddes on account of the $3750 note in the sum of $1152.42 and a deficiency judgment against Mackenzie, Fiddes and the widow and adult heirs of Duncan for $1865.06 on account of the $1200 note instead of for $646.36, which, but for the transfer of credits, was shown to be due thereon.

The errors assigned by the Duncan heirs all challenge the correctness of the action of the circuit judge in ordering the transfer of credits and entering the deficiency judgment against them for $1865.06 instead of for only $646.36, the amount to which they admit under the evidence the petitioner was entitled as of May 24, 1939, when the decree of foreclosure was entered.

The uncontroverted controlling facts established by the record are that prior to the date of the additional

charge the land company had received from the sale of portions of the mortgaged land sufficient money to reduce the principal of the $3750 note to $2876.14 and so applied the same; that thereafter sufficient moneys were received from the sale of portions of the mortgaged land and applied by the land company to the $1200 note to reduce the principal thereof to $476.13; that prior to the loan of the $1200, secured by the additional charge, George T. Coulter perfected a judgment lien against the interest of Mackenzie and Fiddes in said land and in his answer and at the foreclosure hearing claimed that *if* the money credited to the $1200 note, augmented by the net proceeds of the foreclosure sale, were more than sufficient to discharge the balance due on the $3750 note, the surplus should be applied to the discharge of his judgment. Hence, the reservation in the interlocutory decree was, by its express terms, not to be available to the parties unless the net proceeds of the foreclosure sale were more than sufficient, when augmented by all moneys theretofore received from the sale of portions of the mortgaged premises, to pay and discharge the $3750 note; that the proceeds of prior sales and the net proceeds of the foreclosure sale taken together were not sufficient to pay the $3750 note but left a deficit of $1152.42; that the reservation contained in the interlocutory decree was not renewed in the decree confirming the foreclosure sale, the only reservation contained therein relating solely to the application of the net proceeds of the foreclosure sale to the two obligations foreclosed and the entry of the deficiency judgments; that the judgment lien holder abandoned his claim when it appeared that the net proceeds of the foreclosure sale were not sufficient to make the reservation contained in the interlocutory decree available to him and counsel for petitioner so informed the court prior to the entry of the deficiency judgments.

At the hearing held for the purpose of settling the terms of the supplemental decree including deficiency judgments, the uncontroverted evidence was to the effect that the application of moneys to the $1200 note was in accordance with an agreement between the land company and the Duncan heirs, made to induce them to execute the note. However, counsel for petitioner, in his brief, calls attention to his attitude on that question. We quote: "When the Judge indicated from the bench that he was 'ready to rule' * * * counsel for the Receiver said: 'I would like to have it plain, if this ruling about to be made is in my favor, all right, but if it is not, I want Your Honor to permit me to introduce witnesses against this evidence.'" We call attention to this for the reason that counsel for the receiver argues that if the foregoing evidence should be the cause of a reversal, the reversal should leave the question open for further hearing.

If the proceeds of the foreclosure sale had been sufficient to preserve the reservation contained in the interlocutory decree, then we would have to decide whether or not under those circumstances Coulter's judgment lien deprived the parties of the right to apply moneys arising from the sale of portions of the land to the junior note. But since it appears that the proceeds were insufficient for that purpose and that Coulter thereupon abandoned his claim, that question is eliminated from the case. It is perfectly clear that, as between the creditor and the debtor, the only persons affected, the applications of money made by the creditor were not illegal, as held by the circuit judge. (*Conrad Mercantile Co.* v. *Siler,* 75 Mont. 36, 241 Pac. 617.) The general rules governing the rights of the debtor and creditor in the matter of application of payments, where the creditor holds more than one obligation of the debtor, therefore apply.

The rules governing the application of payments, where

the creditor holds more than one obligation of the borrower, is stated in *Reconstruction Finance Corporation* v. *McCormick,* 102 F. (2d) 305, 315, as follows: "It is elementary that in the absence of agreement and in the absence of direction from the borrower, the creditor may apply payments to any obligation he holds. Equally clear, if there be no provision to the contrary, the debtor may designate the application of payment and the creditor must comply with such direction. In case there is a specific agreement covering application of payments on debts, it governs."

In *United States* v. *Kirkpatrick,* 22 U. S. 720, 737, on the subject of when appropriation of payments must be made, the court said: "The general doctrine is, that the debtor has a right, if he pleases, to make the appropriation of payments; if he omits it, the creditor may make it; if both omit it, the law will apply the payments, according to its own notions of justice. It is certainly too late for either party to claim a right to make an appropriation, after the controversy has arisen, and *a fortiori,* at the time of the trial."

Likewise, in *The Sophia Johnson,* 237 Fed. 406, it is said: "Libellant would have the right to apply a general payment made to any account which it may have against the debtor when no application is made by the debtor himself, but this must be done at the time and before any controversy arises. The Mary K. Campbell, 40 Fed. 906. It is too late to make application of payments while preparing for suit, or after suit is instituted. Taylor v. Coleman, 20 Tex. 772; Norris v. Beaty, 6 W. Va. 477." (See also *Benson* v. *Reinshagen,* 75 N. J. Eq. 358, 72 Atl. 954.)

In 48 C. J. § 91, p. 646, it is said: "The application of the payment cannot be diverted without the consent of the debtor, even though the payment is made in property

on which the creditor has a lien. Nor can the creditor's diversion be justified by the circumstance that he could not lawfully accept the payment for application as directed, and that he would have had a right to accept it and apply it as he did in the absence of specific direction by the debtor."

In the case at bar the appropriations of payments were made, either voluntarily by the creditor or in obedience to an express agreement with the debtor (for the purposes of this case it is immaterial which), long before any controversy arose. The question of the propriety or legality of the appropriations does not appear to have occurred to the creditor until the question was raised in the manner hereinbefore related, whereupon the creditor apparently saw that it would be to his advantage to undo what had theretofore been done and make a new appropriation of the payments, thereby enabling him to procure a greater deficiency judgment against the appealing debtors. No third party's rights are involved since the judgment lien holder was eliminated by the failure of the security to sell for enough to benefit him in any event. No principle with which we are familiar will permit this to be done.

For the reasons stated, the decree appealed from is reversed and the cause remanded, with instructions to enter a modified decree in accordance with the views herein expressed.

*M. D. White* for plaintiffs in error.

*A. Perry* for defendants in error.