997 P.2d 68

Lorrin D. LEE, Plaintiff–Appellant,

v.

Francis H. YANO, Defendant/Third–
Party Plaintiff–Appellee,

and

Choong Gill Lee, John Does 1–50, Jane
Does 1–50, Doe Partnerships 1–50,
Doe Corporations 1–50,

and

Doe Entities 1–50, Third–
Party Defendants.

No. 21666.

Intermediate Court of Appeals of Hawai'i.

March 2, 2000.

John Rapp, Honolulu, on the briefs, for Plaintiff–Appellant.

Scott K. Bush, on the briefs, (Law Office of Francis H. Yano) for Defendant/Third–Party Plaintiff–Appellee.

BURNS, C.J., WATANABE and ACOBA, JJ.

Opinion of the Court by BURNS, C.J.

Plaintiff–Appellant Lorrin D. Lee (Lorrin) appeals the circuit court's: (1) February 12, 1997 Order Denying Plaintiff's Motion for Summary Judgment Filed November 22, 1996 (February 12, 1997 Order Denying SJ); (2) May 5, 1997 Order Granting Defendant and Third–Party Plaintiff Francis H. Yano's Motion for Summary Judgment Filed on March 5, 1997 (May 5, 1997 Order Granting SJ); (3) June 8, 1998 Judgment in favor of Defendant/Third–Party     Plaintiff–Appellee

Francis H. Yano (Yano) against Lorrin "as to all claims"; and (4) June 8, 1998 Order Granting Defendant and Third–Party Plaintiff Francis H. Yano's Motion for Attorney's Fees, Costs and Sanctions Filed on April 1, 1998 (June 8, 1998 Order Granting Attorney's Fees) awarding Yano $2,399 in "attorney's fees and costs[.]"

In this opinion, we decide that (1) a guarantor is not a co-obligor or joint and/or several obligor with the principal obligor; (2) the creditor's unsatisfied[1] judgment against the debtor for the amounts of multiple debts, including the guaranteed debt, does not extinguish the guarantor's liability; and (3) when a debtor who owes two or more matured debts to the creditor makes a payment to the creditor, the payment shall be applied according to the following priorities: (a) in accordance with the relevant terms of a binding agreement between the debtor and the creditor, (b) in accordance with the debtor's instructions to the creditor prior to or at the time of the payment, (c) as actually applied by the creditor prior to the existence of any controversy with the debtor or the guarantor concerning the application of the payment, or (d) by the court in accordance with the law's notions of justice as specified in Restatement (Second) of Contracts § 260 (1981).

## BACKGROUND

Lorrin and Third–Party Defendant Choong Gil Lee (Choong) were married and had two children, a daughter born in August 1971 (Daughter) and a son born in August 1975 (Son). On October 29, 1979, Lorrin and Choong were divorced. In its divorce decree, the family court awarded Lorrin custody of Daughter and Son and ordered Choong to pay child support of $200 per child per month commencing August 1, 1979.

On October 30, 1991, the family court entered its order increasing child support to $1,000 per month commencing July 2, 1991, and requiring Choong to pay Lorrin on account of Daughter's tuition, books, and schooling expenses the amount of $1,600 per year at the rate of $133.33 per month commencing July 2, 1991.

On March 16, 1992, in response to Lorrin's February 19, 1992 Motion and Affidavit for Relief After Order, the family court entered an order requiring Choong to pay to Lorrin the following:

Arrearage for child support ($4,800) and attorney's fee ($750) totalling $5,500 [sic] to be [p]aid by 12/1/92 with 11% interest ([p]ayable monthly).

In addition,

Child support of $1,000/month due under 10/30/91 order to be paid through Child Support Enforcement Agency. Tuition, books and school expense money may be paid throughcharges [sic] on Defendant's Credit Card.

Also on March 16, 1992, Choong executed a promissory note (the Note) promising to pay Lorrin the $5,500 for child support arrearage and attorney fees, plus monthly interest at the annual rate of 11% until the principal was paid, and to pay all attorney fees and costs incurred to induce or compel payment. Yano signed the Note as a guarantor. In exchange for Yano's guaranty of Choong's debt, Lorrin gave Choong more time to pay his debt.

On March 21, 1996, Lorrin filed a Motion and Affidavit for Post–Decree Relief in family court seeking past-due child support from Choong.

On May 21, 1996, the family court entered its judgment in favor of Lorrin and against Choong for $27,510.33. Choong did not appeal the family court's May 21, 1996 judgment.

The amount of $27,510.33 was for amounts due through March 31, 1996[,] herein in the amount of $23,041.50[,] together with interest on unpaid child support in the amount of $2,923.83, attorney's fees and costs in the amount of $1,545.00, for a total amount of $27,510.33. Interest on said amount of $23,041.50 shall accrue interest from and after the date hereof at the rate of ten percent (10%) per annum, except that the portion of said amount reduced to the promissory note shall bear interest at the rate stated in the note.

The amount of $23,041.50 was based on Lorrin's itemized statement of payments and

---

1. When the judgment is satisfied, the guarantor's liability is extinguished. *See Converse v. James,*

89 Hawai'i 461, 974 P.2d 1051 (App.1997).

allocations (Lorrin's 1996 Payment Record) attached to Lorrin's March 21, 1996 Motion and Affidavit for Post–Decree Relief, the totals of which were stated as follows:

| | |
|---|---|
| Child support from 1/93 through 3/96 | $29,000 |
| Child support paid from 1/93 through 3/96 | (17,100) |
| Tuition for 1993 and 1994 | 3,200 |
| Promissory Note | 5,550 |
| Interest from 4/92 through 3/96 | 2,391 |

In support of her present claim against Yano, Lorrin presented a record (Lorrin's 1998 Payment Record) contained in her February 19, 1998 answers to interrogatories listing the amounts owed by Choong for the $5,500 principal of the Note, interest on the Note at the rate of 11% per annum, tuition, and child support. Lorrin's 1998 Payment Record also itemized the payments made by Choong. According to Lorrin's 1998 Payment Record, Choong paid Lorrin a total of $23,100 from January 1993 through March 1996. On Lorrin's 1998 Payment Record, Lorrin designated $19,900 of Choong's payments as child support payments [2] and $3,200 of Choong's payments as tuition payments. Lorrin did not apply any of Choong's payments to the Note.

We note that the $23,041.50 amount of the family court's May 21, 1996 judgment is premised on the itemization in Lorrin's 1996 Payment Record that itemizes that Choong paid a total of $17,100 in child support payments through March 1996, whereas Lorrin's 1998 Payment Record itemizes that Choong paid a total of $20,100 in child support payments through March 1996.[3]

---

2. It appears that the support obligation of Third–Party Defendant Choong Gil Lee (Choong) was reduced to $500 per month commencing August 1994.

3. A comparison of Plaintiff–Appellant Lorrin D. Lee's (Lorrin) itemized statement of payments and allocations (Lorrin's 1996 Payment Record) attached to Lorrin's March 21, 1996 Motion and Affidavit for Post–Decree Relief and the itemization submitted by Lorrin in support of her present claim (Lorrin's 1998 Payment Record) is as follows:

| Date | Amount Due | Amount Paid 1996 | Amount Paid 1998 | |
|---|---|---|---|---|
| 1/93 | 1,000 | –0– | –0– | (DATE PAID) |
| 2/93 | 1,000 | –0– | –0– | |
| 3/93 | 1,000 | –0– | –0– | |
| 4/93 | 1,000 | –0– | –0– | |
| 5/93 | 1,000 | –0– | –0– | |
| 6/93 | 1,000 | –0– | –0– | |
| 7/93 | 1,000 | –0– | 500 | (4/95) |
| 8/93 | 1,000 | 500 | 1,000 | (500 in 3/9) |
| 9/93 | 1,000 | –0– | 1,000 | (1/95 & 2/95) |
| 10/93 | 1,000 | –0– | 1,000 | (11/94 & 12/94) |
| 11/93 | 1,000 | –0– | 100 | (10/94) |
| 12/93 | 1,000 | 1,000 | 1,000 | |
| 1/94 | 1,000 | 1,000 | 2,000 | |
| 2/94 | 1,000 | 1,000 | 1,000 | |
| 3/94 | 1,000 | 1,000 | 1,000 | |
| 4/94 | 1,000 | 1,000 | 1,000 | |
| 5/94 | 1,000 | 1,000 | 1,000 | |
| 6/94 | 1,000 | 1,000 | 1,000 | |
| 7/94 | 1,000 | 1,000 | 1,000 | |
| 8/94 | 500 | –0– | 500 | (300 in 9/94, 200 in 10/94) |
| 9/94 | 500 | 800 | 500 | |
| 10/94 | 500 | 800 | 500 | |
| 11/94 | 500 | 1,000 | 500 | |
| 12/94 | 500 | 1,000 | 500 | |
| 1/95 | 500 | 1,000 | 500 | |
| 2/95 | 500 | 1,000 | 500 | |
| 3/95 | 500 | 1,000 | 500 | |

Yano was not a party to this family court proceeding.

On July 16, 1996, Lorrin filed a Complaint against Yano in the district court to collect on the guarantee. Lorrin's Complaint sought the following: $5,550 principal, $3,256 interest, $750 attorney fees, $25 court costs, and $15 sheriff's fees, a total of $9,596. On August 19, 1996, the case was removed to the circuit court. On September 5, 1996, Yano filed a Third–Party Complaint against Choong.

On November 22, 1996, Lorrin filed a motion for summary judgment (November 22, 1996 SJ Motion). In her motion, Lorrin argued as follows:

> In the end, this case turns on a legal question previously raised by Defendant Yano. That question is whether the fact that [Lorrin] filed a separate action (in which Defendant Yano was not a party) against [Choong] and obtained a paper judgment against him means that Defendant Yano is discharged from any liability under his guaranty, even though nothing has been paid.

The circuit court denied this motion in its February 12, 1997 Order Denying SJ.

On March 5, 1997, Yano filed a motion for summary judgment (March 5, 1997 SJ Motion). The circuit court granted this motion in its May 5, 1997 Order Granting SJ based in relevant part on the following considerations:

> Second,.... The Court considered and included the existence and amount of the promissory note in the Order Granting

Motion and Affidavit for Post–Decree Relief filed March 21, 1996, filed on May 21, 1996, and the Judgment filed on May 21, 1996 in FC–D No. 111628....

> Third, [Lorrin] acknowledges receiving the total amount of $19,900 in child support payments from [Choong] subsequent to the execution of the promissory note. The total amount of payments exceeds the principal amount (and accrued interest) of the promissory note guaranteed by [Yano]....

> Fourth, even assuming arguendo that the principal amount of the promissory note had not been paid by [Choong], [Yano's] guarantee obligation was extinguished when [Lorrin] obtained the above-referenced judgment against [Choong] in FC–D No. 111628. The subject promissory note merged into the judgment in favor of [Lorrin] and against [Choong]. *Brooks v. Minn,* 73 Hawaii [Haw.] 566[, 836 P.2d 1081] (1992).

As noted previously, the $19,900 amount should have been $20,100.

On June 13, 1997, Yano dismissed the Third–Party Complaint against all Third–Party Defendants, including Choong.

On April 1, 1998, Yano filed Defendant and Third–Party Plaintiff Francis H. Yano's Motion for Attorney's Fees, Costs and Sanctions. Yano sought $2,399 in attorney fees pursuant to Hawai'i Revised Statutes (HRS) § 607–14 (1993), reasonable attorney fees pursuant to HRS § 607–14.5 (1993), and unspecified costs. In affidavits attached to this motion, Yano's two attorneys stated that they expended billable time on the case valued at $16,215.65.

| | | | | |
|---|---|---|---|---|
| 4/95 | 500 | 1,000 | 500 | |
| 5/95 | 500 | –0– | –0– | |
| 6/95 | 500 | –0– | –0– | |
| 7/95 | 500 | 500 | 500 | |
| 8/95 | 500 | –0– | –0– | |
| 9/95 | 500 | –0– | –0– | |
| 10/95 | 500 | –0– | –0– | |
| 11/95 | 500 | –0– | 300 | (12/95) |
| 12/95 | 500 | 500 | 500 | |
| 1/96 | 500 | –0– | 500 | (12/95) |
| 2/96 | 500 | –0– | 500 | (12/95) |
| 3/96 | 500 | –0– | 500 | (12/95) |
| TOTALS | $29,000 | $17,100 | $20,100 | |

The differences between the two itemizations can be attributed to (1) the allocation in Lorrin's payment records of the excess amounts paid by Choong from 8/94 to 4/95, and (2) a $1,800 payment in 12/95 and an additional $1,000 payment in 1/94 recorded in Lorrin's 1998 Payment Record and not recorded in Lorrin's 1996 Payment Record.

"[I]n all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee," HRS § 607–14 authorizes an award to the defendant of attorney fees not exceeding "twenty-five per cent of . . . the amount sued for if the defendant obtains judgment." HRS § 607–14.5(a) imposes no such limit. It authorizes the award of "a reasonable sum for attorneys' fees, in an amount to be determined by the court upon a specific finding that the party's claim or defense was frivolous." For this to happen, however, HRS § 607–14.5(b) specifies that "the court must find in writing that all claims or defenses made by the party are frivolous and are not reasonably supported by the facts and the law in the civil action." The court did not make such a finding in its June 8, 1998 Judgment and awarded Yano "attorney's fees and costs" of $2,399 or exactly 25% of $9,596.

## LORRIN'S POINTS ON APPEAL

1. The court erred when it denied Lorrin's November 22, 1996 SJ Motion in its February 12, 1997 Order Denying SJ.

2. The court erred when it granted Yano's March 5, 1997 SJ Motion in its May 5, 1997 Order Granting SJ.

3. The court erred when it awarded Yano $2,399 in attorney fees and costs in its June 8, 1998 Order Granting Attorney's Fees.

## RELEVANT STANDARD OF REVIEW

We review a circuit court's grant or denial of summary judgment *de novo* under the same standard applied by the circuit court. *Roxas v. Marcos,* 89 Hawai'i 91, 116, 969 P.2d 1209, 1234 (1998) (citation omitted); *Amfac, Inc. v. Waikiki Beachcomber Investment Co.,* 74 Haw. 85, 104, 839 P.2d 10, 22 (1992) (citation omitted). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any[,] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Roxas,* 89 Hawai'i at 116, 969 P.2d at 1234 (citation omitted); *see* Hawai'i Rules of Civil Procedure Rule 56(c).

## DISCUSSION

### A.

### SUMMARY JUDGMENT

Lorrin contends that the circuit court erred when it (1) denied her November 22, 1996 SJ Motion, and (2) granted Yano's March 5, 1997 SJ Motion. Since both Lorrin's argument in favor of her summary judgment motion and her argument in opposition to Yano's summary judgment motion involve Yano's liability as guarantor of the Note, we will address both arguments together.

### 1.

First, Lorrin relies on HRS § 483–2 (1993) of the Uniform Joint Obligations Act, which provides as follows: "**Co-obligor not discharged when.** A judgment against one or more of several obligors, or against one or more of joint, or of joint and several obligors shall not discharge a co-obligor who was not a party to the proceeding wherein the judgment was rendered." Lorrin also cites several sections from Chapter 13 of the Restatement (Second) of Contracts entitled "Joint and Several Promisors and Promises."

A guarantor is not a co-obligor or a joint and/or several obligor with the principal obligor, and HRS § 483–2 and Chapter 13 of Restatement (Second) of Contracts are not directly on point in this case. Therefore, Yano and Choong were not co-obligors or joint and/or several obligors under HRS chapter 483 or Chapter 13 of Restatement (Second) of Contracts.

*Black's Law Dictionary* 838 (6ᵗʰ ed.1990) defines "joint liability" as "liability that is owed to a third party by two or more other parties together." It further defines "joint and several liability" as "liability of copromisors of the same performance when each of them, individually, has the duty of fully performing the obligation[.]" *Id.* at 837. HRS § 483–1 (1993) states that "[s]everal obligors means obligors severally bound for the same performance." Similarly, the Introductory Note of Chapter 13 of Restatement (Second) of Contracts states that "[t]his Chapter deals with the rights and duties created by multiple promises of the same performance[.]" Restatement (Second) of Contracts, Chapter 13, introductory note.

In contrast, a guarantor does not promise the "same performance" as the prin-

cipal debtor. While a principal debtor promises to pay a specified amount, a guarantor promises to pay that amount only if it cannot be collected from the principal debtor. *See Schweitzer v. Fishel,* 13 Haw. 690, 693 (1901) (holding a guarantor and principal debtor were not "joint and several obligors. They were severally parties to different contracts with the plaintiffs"). A "contract of guaranty is an enforceable undertaking or promise on the part of one person which is collateral to a principal obligation of another and which binds the guarantor . to performance in the event of nonperformance by the principal debtor [or obligor]." *Soukop v. Snyder,* 6 Haw.App. 59, 63, 709 P.2d 109, 112–13 (1985) (citations and internal quotation marks omitted). "The undertaking of the principal debtor being independent of the promise of the guarantor, the guarantor is not a party to the contract between the principal and the guarantee[.]" 38A C.J.S. *Guaranty* § 3 (1996).

### 2.

■ The circuit court ruled in its May 5, 1997 Order Granting SJ that "even assuming arguendo that the principal amount of the promissory note had not been paid by [Choong], [Yano's] guarantee obligation was extinguished when [Lorrin] obtained the above-referenced [May 21, 1996] judgment against [Choong]. *Brooks v. Minn,* 73 [Haw.] 566[, 836 P.2d 1081] (1992)." Lorrin contends that *Brooks* does not apply to the facts in this case. We agree with Lorrin.

In *Brooks,* the divorcing parties entered into a property settlement agreement (PSA) that stated that Minn was to pay Brooks $60,000 in accordance with a promissory note executed by Minn. *Id.* at 568, 836 P.2d at 1083. The PSA was then approved by the family court and incorporated into a final divorce decree. *Id.* at 569, 836 P.2d at 1083. After Minn failed to pay Brooks according to the terms of the note, Brooks filed a complaint against Minn seeking to collect the amounts due under the note. *Id.* The circuit court rendered a judgment in favor of Brooks. *Id.* at 570, 836 P.2d at 1084. On appeal, the Hawai'i Supreme Court disagreed with the circuit court and ruled that "the incorporation of the PSA into the divorce

decree merged the PSA into the final divorce decree; therefore, the [n]ote no longer [had] any independent existence and [was] not enforceable as a contract, but only as an element of the family court's final judgment." *Id.* at 571–72, 836 P.2d at 1084.

■ We conclude that *Brooks* is distinguishable from the instant case because the obligation in *Brooks* did not involve a guaranty by a third party. A guarantor's obligations "rest on the guaranty rather than the underlying obligation. . . . An action on a guaranty provides a separate remedy from remedies on the underlying principal obligation, and may generally be pursued independently of an action on the underlying principal obligation or debt." 38 Am.Jur.2d *Guaranty* § 109 (1999). Thus, Lorrin's cause of action against Yano based on Yano's guaranty is separate from her cause of action against Choong based on the Note, and Yano's guaranty obligation did not merge with Lorrin's May 21, 1996 judgment against Choong.

■ The primary reason the creditor's judgment against the debtor does not discharge the guarantor, who was not a party to the proceeding wherein the judgment was rendered, is that the creditor has a duty to pursue collection from the debtor before pursuing collection from the guarantor. As noted in *Schweitzer, supra,* "under a contract of guaranty, the guarantor is released from liability to the extent that he is injured by the neglect of the creditor to press his claim with reasonable diligence against the principal debtor." *Schweitzer,* 13 Haw. at 693.

■ In *Motion Picture Industry Pension Plan v. Hawaiian Kona Coast Associates,* 9 Haw.App. 42, 823 P.2d 752 (1991), this court adopted the following rule:

Where, in an action by a creditor against a principal, judgment is given, other than by default or confession, in favor of the creditor, and the creditor subsequently brings an action against the surety,[4] proof of the judgment in favor of the creditor creates a rebuttable presumption of the principal's liability to the creditor.

*Id.* at 53, 823 P.2d at 758 (citing Restatement of Security § 139 (1941)) (footnote added). For this rule to have any significance, a creditor must be allowed to bring an action

---

4. In *Motion Picture Industry Pension Plan v. Hawaiian Kona Coast Assoc.,* 9 Haw.App. 42, 823 P.2d 752 (1991), this court stated, "the law applicable to a guarantor should be the same as the law applicable to a surety." *Id.* at 52, 823 P.2d at 757.

against a guarantor even after the creditor receives a judgment against the debtor for the guaranteed debt.

Likewise, in *Sheraton Hawaii Corp. v. Poston*, 51 Haw. 142, 454 P.2d 369 (1969), the creditor obtained a judgment against the principal for $5,700. *Id.* at 143, 454 P.2d at 370. When this judgment was not satisfied, the creditor brought an action against the guarantors and obtained a judgment for $5,700, plus attorney fees. On appeal, the Hawai'i Supreme Court denied the award of attorney fees incurred prior to the judgment against the principal. The court ruled that those attorney fees were necessarily included in the judgment against the principal. In so ruling, the court stated, "Since the amount of liability of [the principal] to [the creditor] had already been determined by the court, collateral estoppel precludes relitigation of that issue by [the creditors] in a subsequent suit against the guarantors." *Id.* at 148, 454 P.2d at 373 (citation omitted). This statement assumes that a creditor may bring a suit against a guarantor to enforce the guarantor's obligation even after receiving a judgment against the principal.

### 3.

■ In its May 5, 1997 Order Granting SJ, the circuit court cited, as one of its reasons for granting Yano's March 5, 1997 SJ Motion and entering its May 5, 1997 Order Granting SJ, the facts that "[Lorrin] acknowledge[d] receiving the total amount of $19,900 in child support payments from [Choong] subsequent to the execution of the promissory note. The total amount of payments exceeds the principal amount (and accrued interest) of the promissory note guaranteed by [Yano]." It appears the circuit court concluded that Yano had a right to have Choong's payments applied to Choong's debt covered by Yano's guaranty rather than to Choong's other obligations to Lorrin, notwithstanding that the relevant facts upon which this assumption is based are in dispute and have not been determined.

In *Union Trust v. Nichols, Ltd.*, 35 Haw. 482 (1940), the Supreme Court of the Territory of Hawai'i set forth general rules regarding the application of payments as follows:

"It is elementary that in the absence of agreement and in the absence of direction from the borrower, the creditor may apply payments to any obligation he holds. Equally clear, if there be no provision to the contrary, the debtor may designate the application of payment and the creditor must comply with such direction. In case there is a specific agreement covering application of payments on debts, it governs." [*Reconstruction Finance Corp. v. McCormick*, 102 F.2d 305, 315 (1939).]

In *United States v. Kirkpatrick*, 22 U.S. [(9 Wheat.)] 720, 737 [6 L.Ed. 199] [(1824)], on the subject of when appropriation of payments must be made, the court said: "The general doctrine is, that the debtor has a right, if he pleases, to make the appropriation of payments; if he omits it, the creditor may make it; if both omit it, the law will apply the payments, according to its own notions of justice. It is certainly too late for either party to claim a right to make an appropriation, after the controversy has arisen, and *a fortiori*, at the time of the trial.... It is too late to make application of payments while preparing for suit, or after suit is instituted."

Likewise, in *The Sophia Johnson*, 237 Fed. 406, it is said: "Libellant would have the right to apply a general payment made to any account which it may have against the debtor when no application is made by the debtor himself, but this must be done at the time and before any controversy arises. *The Mary K. Campbell*, 40 Fed. 906. It is too late to make application of payments while preparing for suit, or after suit is instituted...."

*Id.* at 495; *see also* 60 Am.Jur.2d *Payment* § 94 (1987).[5]

■ In this case, there is no evidence of any "specific agreement covering the application of payments" on Choong's debts. Nor is there evidence that Choong instructed Lorrin to apply his payments to the part of his debt guaranteed by Yano, rather than the part of his debt not guaranteed by Yano. Therefore, pursuant to *Union Trust, supra*, Lorrin was authorized to designate the application of the

---

5. This precedent appears to contemplate a situation where the payments have been made prior to the time the controversy over the allocation of payments has arisen, rather than a situation where the payments are periodic and are being made before and after the time the controversy over the allocation of payments has arisen.

payments and to apply Choong's payments to the part of Choong's debt not guaranteed by Yano, instead of the part of Choong's debt guaranteed by Yano.

> As a general rule, a third person who is secondarily liable on a debt, such as a guarantor, surety, or indorser, cannot control the application which either the debtor or the creditor makes of a payment, and neither the debtor nor the creditor need apply the payment in the manner most beneficial to such persons.

60 Am.Jur.2d *Payment* § 126 (1987); *see also Mid–Continent Supply Co. v. Atkins & Potter Drilling Corp.,* 229 F.2d 68, 69 (10th Cir.1956) (stating "it is the general rule that where a creditor holds different obligations of a debtor, some of which are endorsed or otherwise guaranteed by third parties, ..., unless otherwise directed by the debtor, the creditor may apply the proceeds of a general payment made by the debtor to the obligation or obligations not endorsed or otherwise guaranteed by third parties"); *R.L. Redfearn v. Citizens & Southern National Bank,* 122 Ga.App. 282, 176 S.E.2d 627, 630 (1970) (holding where a debtor does not exercise his/her right to designate which one of several debts to which a payment should be applied, creditor may apply payment as he/she chooses even if there is a surety or guarantor liable on one of the debts).

In her Opening Brief, Lorrin alleges that "she allocated the ongoing payments toward tuition and child support and not to the Promissory Note." As evidence of her allocation, Lorrin submitted Lorrin's 1996 Payment Record and Lorrin's 1998 Payment Record. Each showed that Lorrin applied Choong's payments to his child support and tuition obligations. Lorrin also states in her March 24, 1997 affidavit that "[n]othing was paid [on the Note]. The full amount, together with the interest, is still outstanding."

■ As noted in *Union Trust, supra,* in order for Lorrin's applications of Choong's payments to be controlling, she must have made them before any "controversy" arose. The question is whether, in a case involving a debtor and a guarantor, we are talking about a controversy with the debtor and/or the guarantor. It not being reasonable to have different legally recognized allocations for the debtor as opposed to the guarantor, we

conclude that we are talking about the earliest controversy between the creditor and the debtor and/or the guarantor. The question of whether Lorrin timely exercised her option by applying Choong's payments to Choong's unguaranteed debt prior to the existence of any controversy between her, Choong and Yano concerning the application of the payments is a genuine issue of material fact. Therefore, it cannot be said as a matter of law that Lorrin did or did not satisfy the application requirements of *Union Trust.*

In contrast to Hawai'i's *Union Trust* rule, Restatement (Second) of Contracts § 259 states as follows:

> (1) Except as stated in Subsections (2) and (3), if the debtor has not directed application of a payment as between two or more matured debts, the payment is applied according to a manifestation of intention made within a reasonable time by the creditor to the debtor.
>
> (2) A creditor cannot apply such a payment to a debt if
>
> > (a) the debtor could not have directed its application to that debt, or
> >
> > (b) a forfeiture would result from a failure to apply it to another debt and the creditor knows or has reason to know this, or
> >
> > (c) the debt is disputed or is unenforceable on grounds of public policy.
>
> (3) If a creditor is owed one such debt in his own right and another in a fiduciary capacity, he cannot, unless empowered to do so by the beneficiary, effectively apply to the debt in his own right a greater proportion of a payment than that borne by the unsecured portion of that debt to the unsecured portions of both claims.

As evidenced by the following citations, the Restatement (Second) of Contracts § 259(1) rule has been approved in various jurisdictions. *Jalasko Associates, Inc. v. Newbery Energy Corp.,* 663 P.2d 946, 949 (Alaska 1983); *General Electric Company v. Anchor Casualty Co.,* 251 Minn. 305, 87 N.W.2d 639 (1958); *F.H. McGraw & Co., Inc. v. Sherman Plastering Co., Inc.,* 60 F.Supp. 504, 510 (D.Conn.1943), *aff'd,* 149 F.2d 301 (1945), *cert. denied,* 326 U.S. 753, 66 S.Ct. 92, 90 L.Ed. 452 (1945) (citing Restatement (Second) of Contracts § 391); *Chicago Central C.F.M. Inc. v. Kimmons,* 17 Ill.App.3d 370, 308 N.E.2d 329, 332 (1974); *National Union*

*Fire Insurance Company of Pittsburgh, Pa. v. Studer Tractor and Equipment Co.,* 527 P.2d 820, 830 (Wyo.1974) (citing *General Electric, supra*); 5A Corbin on Contracts § 1231, at 516 (1964); *cf. Lincoln Storage Warehouses v. Commissioner of Internal Revenue,* 189 F.2d 337, 342 n. 9 (3d Cir.1950) ("express recognition was given to the requirement that the intent to make an appropriation must be manifested to the other party.... Whether this rule has been relaxed in New Jersey is open to doubt").

The Hawai'i Supreme Court's *Union Trust* rule, however, does not impose upon the creditor the notification duty imposed by Restatement (Second) of Contracts § 259(1). Other than to avoid factual disputes as to whether the creditor timely exercised the creditor's option, we know of no valid reason why the creditor should be required to inform the debtor as to how the creditor is exercising the option the debtor failed to exercise. In situations where the debtor is making periodic payments, the effect of such information would be to alert the debtor to exercise the option with respect to subsequent payments.

We note that the *Union Trust* rule has a recent supporter. In *Weston Group, Inc. v. A.B. Hirschfeld Press, Inc.,* 845 P.2d 1162, 1167 (Colo.1993), the Colorado Supreme Court declined to change to the Restatement (Second) of Contracts § 259(1) rule for the following reasons:

> It must be noted, however, that in a line of cases originating before the beginning of the twentieth century, we have recognized the general rule to be that in absence of designation by a debtor, the creditor generally may apply the debtor's payments among matured debts in any way the creditor desires.... None of those cases has suggested a requirement that the creditor manifest its intention to the debtor, even though section 391 of the *Restatement (First) of Contracts* (1932), which had been published long before *Jackson [v. A.B.Z. Lumber Co.,* 155 Colo. 33, 392 P.2d 288 (1964) (stating that where a debtor does not apply payment, "creditor is allowed to make the appropriation in a way most advantageous for himself"; but did not resolve whether creditor must manifest its intent to debtor),] was decided, contained such a requirement. In the absence of such a suggestion, we believe

that our cases can most reasonably be read not to impose a requirement of manifestation of the creditor's intent in order to make the creditor's application of the debtor's payments effective. This is an area of the law in which special importance attaches to the clarity and stability of rules, for predictable consequences are important in conducting commercial transactions. If, as we believe, creditors have been led to rely on the absence of a requirement of manifestation of intent as a condition to effectiveness of the application of an undesignated payment by a debtor, we are reluctant to deny that reliance its intended consequence. Furthermore, the dearth of cases presenting this issue during the period of more than a century during which cases involving application of payments on multiple obligations have come before appellate courts in this state suggests that the absence of a manifestation of intent requirement has presented no significant impediment to the conduct of commercial transactions.

*Id.* at 1167–68.

The Hawai'i Supreme Court's *Union Trust* rule affords the debtor the first option. If Lorrin did not satisfy the *Union Trust* application requirements, *Union Trust* specifies that "the law will apply the payments, according to its own notions of justice." The resulting question is whether Restatement (Second) of Contracts § 260 is a valid statement of the law's "own notions of justice." Our answer is yes. Restatement (Second) of Contracts § 260 states as follows:

> Application of Payments Where Neither Party Exercises His[, Her, or Its] Power
>
> (1) If neither the debtor nor the creditor has exercised his[, her or its] power with respect to the application of a payment as between two or more matured debts, the payment is applied to debts to which the creditor could have applied it with just regard to the interests of third persons, the debtor and the creditor.
>
> (2) In applying payments under the rule stated in Subsection (1), a payment is applied to the earliest matured debt and ratably among debts of the same maturity, except that preference is given
>
>> (a) to a debt that the debtor is under a duty to a third person to pay immediately, and

(b) if he[, she or it] is not under such a duty,

(i) to overdue interest rather than principal, and

(ii) to an unsecured or precarious debt rather than to one that is secured or certain of payment.

Other courts have cited and applied Restatement (Second) of Contracts § 260. For example, in *Alside Supply Center v. Vinson*, 802 S.W.2d 632, 635 (Tenn.Ct.App.1990), a contractor, who was hired by a homeowner, charged the materials needed for the job on an open account with a supplier. *Id.* at 632. After being paid by the homeowner, the contractor then used the payment to pay part of the outstanding balance owed to the supplier but did not designate to which debts the payment was to be applied. The supplier applied the payment to the contractor's earlier debts and not to the debt incurred from the materials used in the homeowner's job. The supplier then sued the homeowner to enforce a materialman's lien on the home. *Id.* at 633. The lower court sustained the lien and the appellate court reversed. The appellate court quoted and applied Restatement (Second) of Contracts § 260 and held that contractor's payment should have been applied to the debt for the materials used for the homeowner's home because the contractor owed a duty to the homeowner to pay that debt. *Id.*

In *First Wisconsin Financial Corporation v. Yamaguchi*, 812 F.2d 370 (7th Cir.1987), the court stated in relevant part as follows:

[I]f neither debtor nor creditor communicates a choice, the court selects an equitable method of application. Both the Restatement (Second) of Contracts § 260(2) and the Wisconsin cases express a preference for the FIFO [first in, first out] method when the court must choose. (citations omitted). All this is qualified in the Restatement (Second) of Contracts § 260(1) by a concern that the method recognize the interests of third parties—often guarantors, who may furnish funds for the payment of specific accounts.

*Id.* at 374.

**6.** There may be circumstances in which equitable considerations would require a different application of payments in absence of direction by either

In *Weston Group, Inc.*, the court ruled in relevant part, "If neither the debtor nor the creditor exercises its right to direct application of a payment, then the payment is applied by law in order of time to the earliest matured debts.[6]" 845 P.2d at 1166 (citations omitted; footnote renumbered).

■ We conclude that the law's notions of justice are stated in Restatement (Second) of Contracts § 260. In other words, if the debtor and the creditor both do not exercise their options, the law's order of preference in the application by the creditor of payments received by the creditor is as follows: (1) to a debt that the debtor is under a duty to a third person to pay immediately; (2) to overdue interest rather than principal and to an unsecured or precarious debt rather than to one that is secured or certain of payment; (3) to the earliest matured debt; and (4) ratably among debts of the same maturity.

With respect to preference (1), Restatement (Second) of Contracts § 260(2)(a), comment b, states in relevant part:

If the obligor owes a duty to a third person to pay a particular debt, preference is given to that debt. The duty to the third person may be based on a fiduciary relationship or on contract. Such a duty is owed by a principal debtor to a surety, as a result of the surety's right of exoneration, even though the surety became bound by a contract with the obligee without a request of the principal debtor. This preference applies to all cases of payments made by a principal debtor, even though his [or her] duty to exonerate the surety is merely a general one and does not require him [or her] to use for that purpose the particular money with which payment is made[.]

■ The resulting question is whether a guarantor is a surety. The answer is yes. Hawai'i's Uniform Commercial Code states in HRS § 490:1–201(40) (1993) that "'[s]urety' includes guarantor." Consequently, in *Motion Picture Industry Pension Plan, supra*, this court concluded "that the law applicable to a guarantor should be the same as the law applicable to a surety." 9 Haw.App. at 52, 823 P.2d at 757.

the debtor or the creditor. *Id.* n. 11 (citations omitted); Restatement (Second) of Contracts § 260(2)[.]

## B.
## ATTORNEY FEES

Lorrin contends that the circuit court abused its discretion when it awarded Yano $2,399 in attorney fees and costs in its June 8, 1998 Order Granting Attorney's Fees because of Yano's "inordinate delay in making the request" and for various and sundry other reasons. The circuit court's ruling was based on HRS § 607–14 which states in relevant part that

> in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorneys' fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; ...; provided that this amount shall not exceed twenty-five per cent of the judgment.

Because we have remanded this case for further proceedings, the circuit court's June 8, 1998 Order Granting Attorney's Fees is vacated, and we do not address this issue in this opinion.

## CONCLUSION

Accordingly, we vacate the circuit court's: (1) May 5, 1997 Order Granting Defendant and Third–Party Plaintiff Francis H. Yano's Motion for Summary Judgment Filed on March 5, 1997; (2) June 8, 1998 Judgment in favor of Defendant and Third–Party Plaintiff Francis H. Yano against Plaintiff Lorrin D. Lee as to all claims; and (3) June 8, 1998 Order Granting Defendant and Third–Party Plaintiff Francis H. Yano's Motion for Attorney's Fees, Costs and Sanctions Filed on April 1, 1998. We remand this case for further proceedings consistent with this opinion.

### Dissenting Opinion of ACOBA, J.

I respectfully dissent. Although I rely on grounds different from those relied on by the first circuit court (the circuit court), I believe the circuit court properly ruled that payments by Third-Party Defendant Choong Gill Lee (Choong) must be applied to the 1992 child support arrearages owed Plaintiff-Appellant Lorrin D. Lee (Lorrin). This court may affirm summary judgment based on grounds different from the circuit court. *GGS Co., Ltd. v. Masuda,* 82 Hawai'i 96, 101, 919 P.2d 1008, 1013 (App.1996) (holding that "this court may affirm a grant of summary judgment on any ground appearing in the record, regardless of whether the circuit court relied on it").

### I.

First, I favor the application of *Restatement (Second) of Contracts* § 259(1) (1981) [hereinafter *Restatement (2nd)*]. Sections 259 and 260 are part of chapter 10 of *Restatement (2nd)*, and the rules therein "are based on fundamental principles of fairness and justice." *Id.* at 193. In pursuance of such principles, the Restatement notes that parties "should be encouraged to communicate with each other and seek to resolve [problems] without outside intervention." *Id.* Thus, *Restatement (2nd)* § 259(1) states that in the absence of a direction by the debtor, a creditor may direct application of a debtor's payments but such application is not effective unless, within a reasonable time, the creditor notifies the debtor or otherwise makes the application known to the debtor. Under the Colorado Supreme Court approach favored by the majority, the creditor may apply the payments in any way the creditor desires.[1] I do not believe the Colorado rule is consistent with fundamental principles of fairness and justice as such principles have evolved, and that such an approach only engenders the type of controversy which presents itself in this case. *Cf. Bank of Hawaii v. Kunimoto,* 91 Hawai'i 427, 436, 984 P.2d 1253, 1262 (App.1997) (holding that a bank is required to notify the maker of a promissory note "by some affirmative act" upon exercise of its option to accelerate the maturity date of the note).

### II.

Second, I agree that we should adopt *Restatement (2nd)* § 260, but unlike the majority, I would apply it here and affirm the circuit court's summary judgment order.

### A.

The pertinent facts may be briefly reiterated.

---

1. Were *Restatement (Second) of Contracts* § 259 (1981) [hereinafter *Restatement (2nd)*] in effect in this case, notification to the debtor would remove the uncertainty otherwise inherent in the Colorado rule.

The March 16, 1992 family court order stated:

> Based upon the representations made and the agreement of [Choong and Lorrin], IT IS HEREBY ORDERED that the [motion for child support] is granted in part/denied in part as follows: *Arrearage[s] for child support* ($4,800) and attorney's fee[s] ($750) totalling ($5,500) [*sic*] to be [p]aid [by Choong to Lorrin] by 12/1/92 with 11% interest (Payable monthly)

(Capitals in original; emphases added.) That same day, Choong executed the promissory note in favor of Lorrin as creditor and with Defendant/Third-Party Plaintiff-Appellee Francis H. Yano (Yano) as guarantor of Choong's promise. The terms of the note reiterated the provisions of the family court order for child support owed, referring to the total principal sum due at an annual 11% interest rate. Lorrin's responses to Yano's interrogatories explain the note was "a compromise of *past due* child support payments." (Emphasis added.) Hence, the note was intended to execute the March 16, 1992 order. I believe, therefore, that by virtue of the consensual court order and the related note, there was an agreement among the parties that payments made were to be applied, at the least, in satisfaction of the court order still outstanding.

Despite the fact that Lorrin had begun receiving payments from Choong in July 1993 and had received more than $19,000 by March 1996,[2] she applied *none* of the payments to the outstanding 1992 arrearages. The circuit court found correctly that Lorrin received an amount in excess of the amount due under the promissory note.

### B.

Under *Restatement (2nd)* § 260(1), the creditor is obligated to act with "due regard" to the interests of third persons, as well as the debtor and the creditor. Within that context, Lorrin would be obligated to apply the payments to the "earliest matured debt," *Restatement (2nd)* § 260(2), with the proviso

that preference be given to a debt as to which Choong was under a duty to a third person, such as Yano, to pay. *Restatement (2nd)* § 260(2)(a). Extending § 260 to the facts of our case, it is plain that Lorrin should have applied Choong's payments to satisfy the older matured arrearages ordered paid by the family court. The preference for such payment was buttressed by the fact that the debt was one which Choong was under a duty to the guarantor, Yano, to pay.

Similarly, under the "notions of justice" standard in *Union Trust v. Nichols, Ltd.*, 35 Haw. 482 (1940), I believe that Choong's payments must be applied by Lorrin to pay off the older debt represented by the promissory note and, thus, that summary judgment should be affirmed.[3] The notions of justice standard was adopted from *United States v. Kirkpatrick*, 22 U.S. (9 Wheat.) 720, 6 L.Ed. 199 (1824). In *Kirkpatrick*, there were "long and running accounts, where debits and credits [we]re perpetually occurring, and no balances [we]re otherwise adjusted than for the mere purpose of making rests."[4] *Id.* at 737–38. In that case, the United States Supreme Court held that "payments ought to be applied to extinguish the debts *according to the priority of time*: so that credits [we]re to be deemed payments *pro tanto* of the debts antecedently due." *Id.* at 738 (emphasis added). Thus, under somewhat analogous facts, application of the "notions of justice" standard would require payment of older debts first.

### III.

Therefore, I would hold that *Restatement (2nd)* § 260 and/or *Union Trust's* notions of justice standard, would apply to the facts of this case, and accordingly applied, that summary judgment should be affirmed.

---

2. Plaintiff-Appellant Lorrin D. Lee (Lorrin) included an itemized payment list in her response to Defendant/Third-Party Plaintiff-Appellee Francis Yano's request for interrogatories, revealing the total amount of $19,900 was paid by Third-Party Defendant Choong Gil Lee (Choong), her ex-husband. This payment list is referred to as the 1998 Lorrin payment record in the majority opinion.

3. Conceivably, the notions of justice standard may be broader in scope than *Restatement (2nd)* § 260.

4. As used in *United States v. Kirkpatrick*, 22 U.S. (9 Wheat.) 720, 6 L.Ed. 199 (1824), the word "rest" appears to have meant "an amount still unpaid[;] a balance due[,]" *Webster's New Int'l. Dictionary 1936 (3d ed. 1981)*, a use of the term now obsolete.